819 So.2d 1281 (2002)
LEAF RIVER FOREST PRODUCTS, INC., Appellant,
v.
Charles ROWELL, Appellee.
Charles Rowell, Cross-Appellant,
v.
Leaf River Forest Products, Inc., David I. Hertz, Anita F. Hertz, Woodrow B. Downing, Jr., Shirley Downing, Melinda Ann Downing Spiers, Justin Wade Downing, N.C. "Newell" Sullivan and R.W. Sullivan, Cross-Appellees.
No. 2000-CA-01606-COA.
Court of Appeals of Mississippi.
April 9, 2002.
Rehearing Denied June 25, 2002.
*1282 John Michael Herke, Hattiesburg, attorney for appellant.
William E. Andrews, III, Purvis, Moran M. Pope, III, Hattiesburg, William L. Ducker, Purvis, attorneys for appellee.
Before SOUTHWICK, P.J., LEE, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Charles Rowell filed a complaint against several adjoining landowners in the Chancery Court of Lamar County, alleging that he was entitled to a prescriptive easement or, in the alternative, an easement by necessity through the lands of at least one of the neighboring landowners. The chancellor found that Rowell had an easement by necessity through the land owned by Leaf River Forest Products, Inc. (Leaf River). The chancellor also awarded Rowell a utility easement through Leaf River's property, finding that the way of necessity carried with it the right to lay utility lines. Aggrieved by the judgment, Leaf River appeals, arguing that the chancery court should not have granted the easement because Rowell could not establish when his land actually became landlocked. Additionally, Rowell cross-appeals, asserting that the easement awarded does not provide the most convenient access to a public roadway. We hold that Rowell's cross-appeal is legally insufficient to establish a claim for easement by necessity. Likewise, because the chancellor erred as a matter of law, we reverse the chancellor's final judgment, and we render judgment in favor of Leaf River.

FACTS
¶ 2. Charles Rowell, a resident of Maine, owns a rural, twenty acre lot comprising the north one-half of the southwest quarter of the northeast quarter of Section 29, Township 5 north, Range 15 west, Lamar County, Mississippi. The property is landlocked. Leaf River owns land directly south and east of Rowell's property; Leaf River's land lies between Rowell's property and Scruggs Road, a public roadway that intersects with Highway 589. The northern boundary of Rowell's property is adjoined by several tracts of land owned by three different groups: the Hertz, *1283 Downing, and Spiers families. These lands, as well as property owned by the Sullivan family, obstruct Rowell from direct access to Highway 589.
¶ 3. The evidence shows that the J.J. Newman Lumber Company (J.J. Newman) owned the land belonging to Rowell and all of the named defendants at one point prior to 1910. In 1912, J.J. Newman sold one hundred acres to C.H. Sies, Rowell's great-grandfather. The land now owned by Rowell comprised the bottom twentyacres of the one hundred acres owned by Sies. It is not clear whether Sies had access to a public roadway at the time his land was severed from J.J. Newman's larger tract.
¶ 4. Recently, Rowell constructed a plan to develop and sell his property as residential lots. The plan required Rowell to obtain an easement through the property of at least one adjacent landowner for both ingress and egress as well as utility lines. Rowell approached Leaf River and those owning the properties to the north and attempted to negotiate an agreement in respect to the easement. An agreement could not be reached and Rowell filed suit; however, before the case came to trial, the parties announced that they had reached a settlement. According to the terms of the agreement, Rowell would pay Leaf River for an easement allowing him, as well as his successors in title, to access Scruggs Road. The agreement also granted Rowell utility easements across Leaf River's land as well as the properties to the north of Rowell's land; in exchange for the utility easements Rowell offered to pay compensation and reclaim the land to its natural condition after installing the necessary utility lines.
¶ 5. The chancellor rejected the agreement, finding that it imposed certain obligations on a landowner not party to the agreement. Rowell then reinstated his claim against the adjacent landowners, seeking a right-of-way by prescription or, in the alternative, art easement by necessity. The parties stipulated to many of the facts and the chancellor declined the presentation of oral testimony, opting to decide the issues upon the submission of briefs and a personal inspection of the land.
¶ 6. The chancellor concluded that Rowell was entitled to an easement by necessity over Leaf River's land based on the stipulations that Rowell's land was entirely landlocked and that both tracts were once part of a larger tract owned by J.J. Newman. The chancellor determined that the easement should measure twenty-five feet across and extend over Leaf River's property to a point where it intersected Scruggs Road. Additionally, the chancellor concluded that the existence of the easement by necessity also allowed Rowell the right to have reasonable access to utilities; therefore, the chancellor awarded Rowell a thirty foot wide utility easement over Leaf River's lands. From this judgment, Leaf River appeals.

STANDARD OR REVIEW
¶ 7. We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong or clearly erroneous. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1312-13 (Miss. 1989). Where the chancellor's factual findings are supported by credible evidence, they are protected from reversal on appellate review. Jones v. Jones, 532 So.2d 574, 581 (Miss.1988). This Court, however, reviews all questions of law under a de novo standard. Dieck v. Landry, 796 So.2d 1004, 1007 (¶ 7) (Miss.2001).

LAW AND ANALYSIS
¶ 8. Leaf River argues that Rowell is not entitled to an easement by necessity over its land where Rowell failed to prove that *1284 Leaf River or its ancestors in title caused his property to become landlocked. Moreover, Leaf River contends the evidence actually demonstrates that the properties directly north of Rowell's tract, all having at one time been owned by C.H. Sies, are responsible for causing Rowell's tract to become landlocked. In response to Leaf River's assertions, Rowell maintains that it is impossible to prove when and how the land actually became landlocked. This impossible burden, argues Rowell, is brought about by the absence of public records documenting the existence of public roads in 1912, the time that Rowell's property was separated from J.J. Newman's tract.
¶ 9. An easement may be created by express agreement, prescription, or implication. Huggins v. Wright, 774 So.2d 408, 410 (¶ 8) (Miss.2000). Easements arising out of an implication are generally of two types: implied easements essential to the enjoyment of the land and easements by necessity. Bonelli v. Blakemore, 66 Miss. 136, 143, 5 So. 228, 230-31 (1888). See also Cox v. Trustmark Natl. Bank, 733 So.2d 353, 356 (¶ 11) (Miss.Ct.App.1999). As a general rule, "an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing the lands of another." Taylor v. Hays, 551 So.2d 906, 908 (Miss. 1989). The easement by necessity is a well established doctrine that derives from the common law. Cox, 733 So.2d at 356 (¶¶ 11-13).
¶ 10. Easements by necessity arise from "the implication that someone who owned a large tract would not intend to create inaccessible smaller parcels." Id. at 356 (¶ 20). As the Mississippi Supreme Court observed over a century ago, the easement is necessary for the protection of a buyer's right to use, occupy and enjoy his otherwise useless, landlocked property. Pleas v. Thomas, 75 Miss. 495, 500, 22 So. 820, 821 (1897). Similarly, this Court has defended the implication by noting that both "[c]ommon law and public policy proscribe restraints on alienation." Pitts v. Foster, 743 So.2d 1066, 1070 (¶ 14) (Miss. Ct.App.1999). This, however, does not mean that the owner of the dominant estate has a permanent right in the easement. See Taylor, 551 So.2d at 908-09. It is well established that the implicit right of way is terminable; that is, the easement continues only as long as necessity exists. See Pitts, 743 So.2d at 1068-69 (¶ 8).
¶ 11. The burden of proof is on the claimant seeking an easement by necessity; the party must establish that he is implicitly entitled to the right of way across another's land. Broadhead v. Terpening, 611 So.2d 949, 953 (Miss.1992). In order to satisfy this burden, the party must first demonstrate strict necessity; he is required to establish that the tract at issue is without any means of access. Id. The existence of necessity alone, however, does not create an easement by necessity. Id. Additionally, the claimant must prove that his tract and the adjacent property through which the right of way is sought were at one time part of a larger, commonly-owned parcel of land. Id. See also Rogers v. Marlin, 754 So.2d 1267, 1272 (¶ 11) (Miss.Ct.App.1999); Cox, 733 So.2d at 356 (¶ 11) (stating that the easement may only traverse "land that once comprised the larger tract, and not over just any adjacent lands that might be a convenient way to a public road."). Finally, the claimant must demonstrate that the implicit right of way arose at the time of the initial severance from the common owner. See Wills v. Reid, 86 Miss. 446, 453, 38 So. 793, 795 (1905) (stating that an easement by necessity will not exist unless it is demonstrated that the necessity arose the exact moment *1285 of the conveyance or severance from the common tract).
¶ 12. It is undisputed that the parties to this appeal hold land that was part of a larger tract owned by J.J. Newman. Furthermore, the parties agree that Rowell's property is landlocked; as the evidence clearly shows, Rowell cannot access a public road from his property without trespassing over the tracts owned by the adjacent landowners. The parties do, however, dispute whether Rowell should be required to prove the final element, that the necessity arose at the time his property was severed from J.J. Newman's land.
¶ 13. As the final judgment from the chancery court clearly demonstrates, the chancellor did not require Rowell to prove that his land was landlocked at the time it was severed from the property owned by J.J. Newman. Rowell argues that he should have been relieved of the burden of establishing that his property became landlocked at the time it was severed from J.J. Newman's tract due to the extraordinary facts of this case, namely, the lack of records showing the location of public roads in 1912, the year Newman conveyed the property to Rowell's predecessor in title, C.H. Sies. In effect, Rowell requests this Court to find that he is entitled to a free easement by necessity over Leaf River's land even though there is no proof that Leaf River's land bears any responsibility for the current landlocked status of Rowell's property.
¶ 14. We reject Rowell's argument, noting that if we were to afford Rowell an easement by necessity through Leaf River's land, without requiring Rowell to prove when the land actually became landlocked, we would undermine the purposes of the easement and infringe upon the rights of third party landowners. As noted, the easement by necessity is an implicit agreement between the owners of specific dominant and servient estates, providing that a right of way through the grantor's property exists as the grantor would not have intentionally conveyed useless, landlocked property. This right of way runs with the land and can always be claimed by the successors in title to the dominant estate, against the owners of the servient estate, as long as the necessity for the easement continues to exist. See Broadhead, 611 So.2d at 954. However, at no point does this right of way extend over properties that were not part of the original servient estate at the time of the severance. Here, Rowell presents no evidence that the severance from J.J. Newman's tract in 1912 caused his property to become landlocked. In effect, Rowell is unable to show that the severance of Sies's tract of land from J.J. Newman's property caused Newman's property to become a servient estate. Accordingly, we hold that the trial court erred, as a matter of law, when it established an easement by necessity, including the rights to a utility easement, through Leaf River's land in favor of Rowell. The judgment of the chancery court is reversed and rendered in favor of Leaf River.
¶ 15. Leaf River also requests this Court to reverse the chancellor's assessment of court costs in the event that we reverse this case. The assessment of court costs is within the chancellor's sound discretion; however, as a general rule, the costs of court should be assessed against the losing party. See Fant v. Standard Oil Co., 247 So.2d 132, 133-34 (Miss.1971) (discretion); White v. Usry, 800 So.2d 125, 133 (¶ 41) (Miss.Ct.App.2001) (noting that losing party should bear costs). Here, Rowell brought several defendants into court after the settlement agreement fell through. Rowell was aware throughout the entire proceedings that he could not establish an essential element for proving *1286 easement by necessity. As such, we hold that all court costs should be assessed to Rowell.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS REVERSED AND RENDERED AS TO BOTH THE APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE, CHARLES ROWELL.
McMILLIN, C.J., SOUTHWICK, P.J., THOMAS, LEE, AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN PART, DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., BRIDGES AND MYERS, JJ.
IRVING, J., concurring in part, dissenting in part:
¶ 17. I agree with the majority that this case must be reversed. However, rather than reversing and rendering, I would reverse and remand for further consideration.
¶ 18. It is not disputed that Rowell's land is landlocked. This being the case, it is obvious that the land became landlocked either as a result of the conveyance in 1912 to C.H. Sies or at some undetermined date when the larger tract of land remaining with JJ Newman Lumber Company was sold. I think it is a reasonable and safe assumption that when the one hundred acre tract was sold to C.H. Sies in 1912, the Sies tract did not become landlocked or else an easement would have been obtained at that time.
¶ 19. All of Rowell's adjoining neighbors were made party defendants. The chancellor determined that the land owned by Leaf River was the servient estate. Implicit in this determination is a sub-finding that at one time Leaf River's land and Rowell's land were part of a common tract. The majority finds that Rowell failed to present any evidence to undergird such a finding. Rowell, of course, contends that he should be relieved of the responsibility of meeting this element of proof because of the near impossibility of proving what the situation was over ninety years ago. I cannot say Rowell's contention in this regard does not warrant further consideration.
¶ 20. In any event, it seems evident to me that Rowell is entitled to some relief from either Leaf River or one of the other surrounding land owners. It is noteworthy that this case was tried without the benefit of oral testimony and after the chancellor rejected an agreement designed to settle the matter. I would reverse and remand for a full-blown hearing at which time Rowell would be permitted to prove, if indeed he can, a case of easement by necessity from either of the surrounding land owners. Consequently, for the reasons presented, I dissent from the majority's decision to reverse and render but agree with the majority that the case should be reversed because of the failure of proof as to a critical element.
KING, P.J., BRIDGES, AND MYERS, J.J. JOIN THIS SEPARATE WRITTEN OPINION.