# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01137-SCT

*ANNE W. WEISSINGER, MARTHA W. WEISSINGER, WILLIAM T. WYNN, II, AND MARGARET W. FORTIER*

*v.*

*ELLIOTT VAUGHAN DOSS SIMPSON, LENORE ANNE D. GAULT AND CYNTHIA LOUISE DOSS COOPER*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/15/2002 |
| TRIAL JUDGE: | HON. CEOLA JAMES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | FRANKLIN ALAN GARRISON |
| | NEVILLE H. BOSCHERT |
| | CHARLES H. WEISSINGER |
| ATTORNEYS FOR APPELLEES: | E. RANDOLPH NOBLE, JR. |
| | DAVID S. ROUNSAVALL |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this estate case, we review a chancellor's finding that a testator's use of the term "then living issue" was intended to include adopted children. This Court must determine whether the phrase "then living issue" includes adopted children as beneficiaries to a class gift when the testator has used different language ("children, including adopted children") in the will to specifically include adopted children as the beneficiaries to a different gift. We find that the chancellor erred. When a testator uses distinctly different

terms in his will, he intends different results; therefore in this case, the term "then living issue" does not include adopted children. Additionally, this Court finds the chancellor did not err in refusing to order an immediate disbursement of four-sevenths of the trust to the natural children, nor did she err in failing to recuse herself from the proceedings due to ex parte contacts with the late Douglas C. Wynn.

**FACTS**

¶2.    Douglas C. Wynn (Douglas) was born in 1932, and as a child, he was adopted by Margaret B. Wynn. Margaret B. Wynn was the sister of Douglas W. Brooks (Brooks). Douglas was Brooks's nephew.

¶3.    On September 18, 1968, Brooks executed a will that created, at his death, the Douglas W. Brooks Trust FBO Margaret B. Wynn (Trust). Brooks's will provided that, at the death of Douglas C. Wynn, "the Trustee shall pay over the entire then remaining accumulated income and corpus of Trust B, in equal shares per stirpes to the then living issue of Douglas C. Wynn." Brooks died on October 24, 1969.

¶4.    Leila Clark Wynn and Douglas were married in June of 1954; four children, Margaret, Martha, Anne and William, were to born to the marriage. Leila and Douglas divorced in September of 1988. The next day, Douglas married Lucy Vaughan Wynn.

¶5.    Lucy was previously married; four children, Lenore, Vaughan, Cynthia, and Jennifer, were born to her previous marriage. Two years after Lucy and Douglas married, on November 2, 1990, Douglas adopted three of Lucy's daughters, Lenore, Vaughan, and Cynthia. A decree of adoption for each was entered in Washington County, Mississippi.

¶6.    On September 13, 2001, the Trustee for the Douglas W. Brooks Trust (Trust) advised the natural and adopted children of the then recently deceased Douglas C. Wynn that the Trust would be terminated and the principal distributed equally among the seven of them. On September 19, 2001, counsel for

2

William T. Wynn, II notified the Trustee he objected to a disbursement of any portion of the Trust proceeds to the adopted children. On November 13, 2001, the National Bank of Commerce (Bank) filed a Complaint for Declaratory Relief and Interpleader in the Chancery Court of Washington County, asking the chancery court to determine and adjudicate the proper beneficiaries of the Trust.

¶7. On January 18, 2002, the four natural children, Anne W. Weissinger, Martha W. Weissinger, William T. Wynn, II., and Margaret W. Fortier, filed a motion asking for an immediate disbursement to them of an amount equal to four-sevenths of the value of the Trust. Following a hearing, the chancery court denied their motion.

¶8. The natural children then filed their memorandum of facts and authorities in support of request for relief. The adopted children, Elliott Vaughn Doss Simpson, Lenore Anne D. Gault, and Cynthia Louise Doss Cooper, then filed their memorandum of facts and authorities in response. Since the parties agreed there were no questions of fact, only questions of law, a statement of stipulated facts was submitted in a separate pleading simultaneously with the request for relief.

¶9. The chancery court held a hearing on May 2, 2002. The chancery court then dictated its ruling from the bench into the record. An order prepared by counsel for the adopted children memorializing this ruling was signed and entered on May 15, 2002. On the same day, the chancery court entered an order relieving the Bank of any obligation to participate further in the action and allowing it to remain custodian and trustee of the Trust until a final order from the final appellate court orders distribution.

¶10. The natural children filed a motion to vacate judgment, motion for recusal, and motion for new trial. A hearing was held on that motion on June 3, 2002. The chancery court denied the motions the same day. The natural children then filed the appeal that is now before this Court. The Bank is not a party to this appeal.

3

## STANDARD OF REVIEW

¶11.    This Court has ruled that

> [i]t should not interfere with the chancellor's findings of fact unless they were 'manifestly wrong, clearly erroneous or an erroneous legal standard was applied.' ***Bell v. Parker***, 563 So.2d 594, 596-97 (Miss.1990). However, the chancery court's interpretation and application of the law is reviewed under a de novo standard.

***Tucker v. Prisock***, 791 So.2d 190, 192 (Miss. 2001) (citing ***In re Carney***, 758 So.2d 1017, 1019 (Miss. 2000)).

## LAW AND ANALYSIS

**I.    WHETHER THE CLASS CREATED BY THE TERM "ISSUE" IN DOUGLAS W. BROOKS'S WILL INCLUDE THE ADULT ADOPTED CHILDREN OF DOUGLAS C. WYNN.[1]**

¶12.    When a court must construe a testator's will, the first place it looks is to the will itself, giving due consideration and weight to every word. ***Matter of Homburg***, 697 So. 2d 1154, 1157 (Miss. 1997); ***In re Granberry's Estate***, 310 So. 2d 708, 711 (Miss. 1975). At least two rules of construction are helpful in this case. First, the intention of the testator is controlling. ***May v. Hunt***, 404 So. 2d 1373, 1376 (Miss. 1981). Second, the testator's intent must, if possible, be gathered from the entire will, giving due consideration and weight to every word in it. ***In re Granberry's Estate***, 310 So. 2d at 711.

¶13.    This case involves a gift to a class of beneficiaries. A gift to a group whose members are not individually named is generally held to be a class gift. ***Lee v. Foley***, 224 Miss. 684, 689, 80 So. 2d 765, 766 (1955). When the time of distribution of the gift to the class is delayed because of an intervening interest, the class membership will be ascertained when the interest in the gift is deemed by the law to have vested in the beneficiaries. ***Branton v. Buckley***, 99 Miss. 116, 54 So. 850, 850 (1911).

---

[1]The natural children listed twelve issues. The first eight issues can be captured by this single issue statement; therefore, we address the first eight issues as one for clarity.

¶14. The natural children of Douglas argue there is no evidence showing Brooks intended that the subsequently adopted adult children of Douglas be considered "issue" under his will. In support of this assertion they point to the second page of Brooks's will where Brooks uses the language "children, including adopted children," as opposed to his use of "then living issue" in the other portions of the will. They contend that Brooks used the explicit language to refer to Douglas, the adopted child of Margaret B. Wynn, but that Brooks had no intention of including any other adopted children. The natural children maintain that there is no other reason for the use of different terms than that Brooks did not intend to include adopted children in the term "issue."

¶15. The natural children further claim that in order "[t]o prevail, the adult adoptees had to affirmatively show that Brooks intended to include the subsequently adopted adult children . . . in the term 'issue' in his Will." In *Dodds v. Deposit Guaranty National Bank*, 371 So. 2d 878, 881 (Miss. 1979), this Court held that the adopted son of Edwin Dodds was his descendant "and as such is entitled . . . to share in the trust as a member of the class created by the trust unless there is language within the will directing otherwise." In Brooks's will, the use of a different term "children, including adopted children" operates to exclude adopted children when the term "issue" is subsequently used alone. Had Brooks intended to include adopted children in the term "issue," he could have added the phrase "including adopted children," as he did in the previous part of his will when referring to Douglas.

¶16. As the adopted children assert, Brooks had no way of knowing who would be included in the class of Douglas's "then living issue" which he intended to open upon the execution of his will and not close until Douglas's death. Any number of changes were possible including marriages, births, deaths, and even adoption; however, Brooks did not allow for the adoption of children to be included in his use of the term "issue."

¶17.    Next, the natural children argue the chancery court did not follow well-established rules of construction, mandating a holding that Brooks meant to distinguish between natural children and adoptees. In that vein, the natural children contend the chancery court was bound to hold that Brooks knew the difference between the terms in question, meant to distinguish between them and had in mind "different results," according to *Strickland v. Delta Investment Co.*, 163 Miss. 772, 137 So. 734, 736 (1931). According to the rules of construction, the intention of the testator is controlling. *May*, 404 So. 2d at 1376. Here, the testator used the words "then living issue" to designate the class of beneficiaries to whom the Trust would be paid; however, Brooks did not specify to include or exclude adopted children. Then, Brooks's intent should be gathered from the entire will, giving consideration to every word in it. *In re Granberry's Estate*, 310 So 2d at 711. One can see that when Brooks knew an adopted child existed, he specifically included him with "children, including adopted children." Since he used language of inclusion in part of the will, the absence of inclusive language in another part acts as an exclusion.

¶18.    We find that Brooks used two different terms in his will because he intended different results for each term. When Brooks intended to include adopted children, he used the language "including adopted children." When Brooks intended to exclude adopted children, he used the word "issue" without the words "including adopted children." The trial court erred in finding Brooks intended to include Douglas's adopted children. We reverse and remand for proceedings consistent with this opinion.

II.    **WHETHER THE CHANCERY COURT ERRED BY NOT ORDERING THE BANK TO IMMEDIATELY DISBURSE FOUR-SEVENTHS OF THE TRUST TO ANNE W. WEISSINGER, MARTHA W. WEISSINGER, MARGARET W. FORTIER, AND WILLIAM T. WYNN, II, FOLLOWING THEIR REQUEST FOR IMMEDIATE DISBURSEMENT ON JANUARY 18, 2002.**

6

¶19. As already noted, a chancellor's findings should be allowed to stand "unless they were 'manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" **Bell**, 563 So.2d at 596-97. The natural children contend that they should not be liable for any value the trust may lose before it is disbursed because the court did not disburse their undisputed share. In fact, the record indicates that the value of the trust increased over this time. Considering the fact that class gifts are to be treated as a whole and not divided until disbursement and that the chancellor found the bank, trustee, and attorneys would continue to work on the trust and require fees, we find the chancellor acted reasonably in disallowing partial disbursement. We affirm the trial court's denial of an order for immediate disbursement of four-sevenths of the trust to the natural children.

III. **WHETHER THE CHANCERY COURT ERRED WHEN IT FAILED TO VACATE THE JUDGMENT AFTER REPEATED REFERENCES WERE MADE BY THE ADOPTED CHILDREN TO FACTS CLEARLY NOT IN EVIDENCE.**

IV. **WHETHER THE CHANCERY COURT ERRED WHEN IT FAILED TO DISCLOSE TO THE PARTIES, AT THE OUTSET OF THE PROCEEDINGS THAT PRIOR TO THIS ACTION, IT ENGAGED IN DETAILED CONVERSATIONS WITH THE PARTIES' FATHER, DOUGLAS C. WYNN, SHORTLY BEFORE HIS DEATH, ABOUT MATTERS DIRECTLY AT ISSUE IN THE LITIGATION.**

V. **WHETHER THE CHANCERY COURT ERRED WHEN IT DENIED THE NATURAL CHILDREN'S MOTION TO VACATE JUDGMENT, MOTION FOR RECUSAL, AND MOTION FOR NEW TRIAL IN THIS MATTER.**

¶20. We address these three issues together. The natural children allege that the chancellor considered facts which were not part of the record and made explicit references to and considered her meetings with the parties' father. They moved for her recusal from the case after the judgment was rendered, citing several portions of the Code of Judicial Conduct as follows:

7

Canon 2(B) A judge "should not allow his family, social or other relationships to influence his judicial conduct or judgment."

Canon 3(A)(4) "[A] judge should . . . [not] . . . consider ex parte or other communications concerning a pending or impending proceeding."

Canon 3(C)(1) mandating recusal "including but not limited to instances where (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; (b) . . . or the judge . . . has been a material witness concerning [the matter].

Though this Court finds that the chancellor used an incorrect legal standard in deciding the instant case, no evidence has been presented indicating that bias, prejudice, or ex parte proceedings persuaded the chancellor to decide as she did.

¶21.    Recently, this Court referenced an earlier decision that found "the chancellor did not abuse his discretion in refusing to recuse himself from a case in which he had limited ex parte contacts with a lawyer representing a party in that pending case." *In re Conservatorship of Bardwell*, 849 So. 2d 1240, 1246 (Miss. 2003) (citing *Bryan v. Holzer*, 589 So. 2d 648 (Miss. 1991)). In *Bardwell*, this Court further explained the objective criteria under Canon 3 to be considered in whether recusal is necessary:

> "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Rutland v. Pridgen*, 493 So. 2d 952, 954 (Miss. 1986); [*Collins v. Dixie Transport, Inc.*, 543 So.2d 160, 164 (Miss.1989); *Jenkins v. State*, 570 So.2d 1191, 1192 (Miss.1990)]. . . . When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion." *Ruffin v. State*, 481 So.2d 312 at 317 (Miss.1985) (quoting *McLendon v. State*, 187 Miss. 247, 191 So. 821, 823 (1939)); *Buchanan v. Buchanan*, 587 So.2d 892 (Miss.1991); *Turner*, 573 So.2d at 677.

*Bardwell*, 849 So. 2d at 1246-47 (quoting *Bryan*, 589 So.2d at 654).

¶22.    The chancellor did make references in court to the late Douglas Wynn and their ex parte communications just prior to his death, but the record does not show that the court based its decision on

8

these. The evidence here is not adequate to support a finding that a reasonable person would harbor doubts about the chancellor's impartiality. As stated in **Bardwell**,

> if 'substantial involvement' in a case (or a party) were legitimate grounds for recusal, a circuit judge or county judge with five indictments on the same defendant would have to get four other judges involved in presiding over the remaining cases because of 'substantial involvement' with the criminal defendant in the first case.

849 So. 2d at 1247. Finding no error, we affirm the trial court's refusal to recuse from the case.

## CONCLUSION

¶23.    We find that the trial court erred in finding the term "then living issue" in Brooks's will included the adopted daughters of Douglas. The trial court did not err in refusing to order an immediate disbursement of four-sevenths of the trust to the natural children, nor did it err in failing to recuse due to ex parte contacts with the late Douglas Wynn. The trial court judgment is affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

¶24.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. PITTMAN, C.J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**