# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00882-SCT

*WILLIAM WALLACE ALLRED*

*v.*

*WILEY FAIRCHILD; FAIRCHILD-WINDHAM*
*EXPLORATION COMPANY, A PARTNERSHIP;*
*JOHN M. FAIRCHILD, MICHAEL B. MOORE AND*
*MARK A. FAIRCHILD, TRUSTEES OF THE MARIE*
*L. FAIRCHILD LIFE INSURANCE TRUST; B. R.*
*NOEL, MARK A. FAIRCHILD AND JOHN M.*
*FAIRCHILD, EXECUTORS OF THE ESTATE OF*
*WILEY FAIRCHILD, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/26/2004 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OTIS JOHNSON |
| | KEITH R. RAULSTON |
| ATTORNEY FOR APPELLEES: | LAWRENCE CARY GUNN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/08/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     William Wallace Allred ("Allred") filed suit on December 19, 1990 against Wiley Fairchild ("Fairchild") alleging that he was due a commission for services rendered in connection with the sale of oil and gas leases, minerals and royalties in a transaction hereafter referred to as the Windham Properties. To compensate Allred for his services in connection

with the Windham Properties purchase, Fairchild agreed to convey to Allred a 10% interest in the properties "after payout."[1] Fairchild also agreed to keep Allred informed as to the status of the payout.

## FACTS AND PROCEDURAL HISTORY

¶2.     In the late 1980's a dispute arose between Allred and Fairchild for Fairchild's refusal to furnish payout information to Allred and for his refusal to assign Allred the 10% interest in the Windham Properties. Allred's complaint sought enforcement of the agreement of 10% interest in the Windham Properties after payout, imposition of a constructive trust, accounting, actual damages, and other relief. Fairchild admitted that he told Allred that he would pay $2,250,000.00 for the Windham Properties, but denied that there was an agreement to pay Allred a commission.

¶3.     The case was tried in the Chancery Court of Covington County, Mississippi and on December 16, 1998, the special chancellor held that Allred was not entitled to any relief. The chancellor further found that payout of the Windham Properties had occurred in July of 1981. Allred appealed the decision to this Court.

¶4.     On May 31, 2001, this Court reversed and remanded the chancellor's decision. On remand, the chancery court awarded Allred over $6,000,000.00. On May 22, 2003, Allred filed a costs bill with the chancery court. The costs bill was in the amount of $79,858.35. The sum of $79, 235.35 represented fees paid to Oscar Hartman ("Hartman"), an oil and gas accountant,

---

[1]In the oil and gas industry the term "payout" refers to that point in time when income, including proceeds from production and sale of oil, gas and other minerals from the properties, has equaled the cost and expense of acquiring the properties and operating them. Therefore, with the exception of some minor overhead expenses, the income derived translates into profits.

for his work preceding and during the trials. On May 23, 2003, Fairchild filed an objection to the costs bill. Allred filed a motion for assessment of costs and response to defendant's objection.

¶5.    The chancery court rendered its opinion on Allred's motion for the assessment of fees to Hartman as costs and denied the motion. On April 1, 2004, the chancery court found that there were no exceptional circumstances to warrant Allred's recovery of the fees paid to Hartman and declined to grant the fees to Allred.

On April 29, 2004, Allred filed an appeal to this Court, raising two issues:

I.    The chancery court erred in finding that there were no exceptional circumstances that would authorize the chancery court to exercise discretion and grant accounting fees as expenses to Allred.

II.    The chancery court erred in finding that there was no evidence to show that the accountant's fees were reasonable.

## DISCUSSION

**I.    Whether the chancery court erred in finding that there were no exceptional circumstances that would authorize the court to exercise discretion and grant accounting fees as costs and expenses to Allred.**

¶6.    We will reverse a chancellor's decision only where he is manifestly wrong. *Hans v. Hans,* 482 So.2d 1117, 1119 (Miss. 1986). A chancellor's findings will not be disturbed unless he is manifestly wrong, clearly erroneous or an erroneous legal standards applied. *Tinnin v. First United Bank of Mississippi,* 570 So.2d 1193, 1194 (Miss. 1990); *O.J. Stanton & Co. V. Mississippi State Highway Commission,* 370 So.2d 909, 911 (Miss. 1979). However, the chancery court's interpretation and application of the law is reviewed under a de

novo standard. *Weissinger v. Simpson,* 861 So.2d 984, 987 (Miss. 2003).

### A. Did exceptional circumstances exist and did the chancery court abuse its discretion in not awarding accounting fees to Allred?

¶7.     Allred contends that the undisputed facts and circumstances require this Court to reverse the decision of the chancery court and award Allred the accounting fees which he paid to Hartman. Fairchild counters that Allred has not cited a single precedent, rule, statute, or any legal authority that would justify the imposition of expert witness fees as costs.

¶8.     Fairchild argues that Allred is not entitled to recover accounting fees as costs under Mississippi Rule of Civil Procedure 54(d) which states:

> Except when express provision therefor is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs, and this provision is applicable in all cases in which the State of Mississippi is a party plaintiff in civil actions as in cases of individual suitors. In all cases where costs are adjudged against any party who has given security for costs, execution may be ordered to issue against such security. Costs may be taxed by the clerk on one day's notice. On motions served within five days of the receipt of notice of such taxation, the action of the clerk may be reviewed by the court.

However, the comments to Mississippi Rule of Civil Procedure 54(d) state:

> Although costs has an everyday meaning synonymous with expenses, taxable costs under Rule 54(d) is more limited and represents those official expenses, such as court fees, that a court will assess against a litigant. Costs almost always amount to less than a successful litigant's total expenses...Absent a special statute or rule, or an exceptional exercise of judicial discretion, such items as attorney's fees, travel expenditures, and investigatory expenses will not qualify either as statutory fees or reimbursable costs. These expenses must be borne by the litigants.

¶9.     Fairchild argues that this case is distinguished from *Memphis Hardwood Flooring*

4

*Company v. Daniels,* 771 So.2d 924 (Miss. 2000), in that expert witness fees were awarded specifically because there is a statute, Miss. Code Ann. § 95-5-10(3), which allows expert witness fees and attorney fees to be assessed as court costs under Mississippi's timber trespass statute. Fairchild is also correct when he asserts that in *Selleck v. S.F. Cockwell Trading, Inc.,* 517 So.2d 558 (Miss. 1987), the plaintiff was awarded expert witness fees not as "costs," but as *sanctions* against the defendant as a penalty for jury tampering. Allred has not requested that we award the accounting fees as sanctions for Fairchild's fraudulent conduct, but that we assess the fees against Fairchild as costs.

¶10.    Allred relies solely upon the exercise of exceptional judicial discretion as referenced in the comments to Rule 54(d) and argues that *but for* Fairchild's fraud, he would not have incurred the costs and expenses of payout determination and accounting for the monies due to him. Exceptional circumstances must exist in order for the court to exercise exceptional judicial discretion. We must look to the record to determine whether or not exceptional circumstances exist.

In *Allred I*, we stated:

> ...Allred cites an extensive list of alleged discovery violations in support of his assertion that Fairchild committed fraud. Allred's contention is that Fairchild purposely lied, withheld evidence and did everything possible to cover up the fact that he owed Allred a percentage of the Windham Properties. This fraud has allowed Fairchild to benefit from the 10% interest due Allred per their oral
> agreement. As such, Fairchild should not be allowed to benefit from his wrongdoing as a matter of law. (785 So.2d 1064, paragraph 8).

The Court also established that "it was this confidential relationship [between Allred and Fairchild] that allowed Fairchild to conceal the truth concerning the payout so long." *Id.*

Finally, this Court found that:

> Furthermore, Fairchild made numerous false representations and swore under oath to them, including: denying the existence of an oral contract, until presented with the evidence of one; denying the existence of any documented proof of the contract when P-67 (a February, 1974 memo) evidenced the existence of a contract; sworn testimony that payout records were never kept when, in fact, his long-time secretary testified that they were; failure to turn over many highly relevant documents, even after compelled to do so. *Id.* P. 1070 (paragraph 17).

¶11.     Based upon the evidence present in the record, we found Fairchild's actions to be riddled with fraud and deception and that the confidential relationship between the parties allowed Fairchild to perpetrate the fraud for a substantial period of time. We also determined that Fairchild denied the very existence of an oral contract, until he was presented with documented evidence that an oral contract existed.

¶12.     Moreover, this Court has previously held that extra-contractual damages may be appropriate even in cases where a party's conduct does not warrant punitive damages. *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290, 295 (Miss. 1992). It is axiomatic that one is liable for the full measure of the reasonably foreseeable consequences of their actions. *Id.* at 295. It was entirely foreseeable by Fairchild that his breach of the contract and his continued denial of its existence would lead to substantial litigation and accounting costs. Those costs should be borne by Fairchild. Considering these facts, Allred has proven that exceptional circumstances existed.

> **B.     Did the chancery court err when it failed to exercise exceptional judicial discretion?**

¶13.     When the chancellor refused to exercise exceptional judicial discretion and award the accounting fees to Allred, the chancellor stated as follows:

6

> Here, I think the facts would bear out that both parties for the sake of argument, assuming that this matter had not reached the litigation stage, would have still employed an accountant to determine what their respective positions would be and respective amounts due from and owing to the other. I don't find that the misconduct as cited by the Supreme Court necessitated the hiring of an accountant anymore so then one would have been otherwise.

Based upon the language used by the chancellor, he is strictly using hindsight to speculate as to what the parties *would have done* absent litigation instead of solely relying on the record before him. All evidence in the record points to a conclusion different from that reached by the chancellor. According to the record, in the 20 years that Allred did business with Fairchild, Allred never did his own accounting. Fairchild's office personnel always conducted the accountings and were responsible for maintaining the records on the Windham Properties. Fairchild advised his personnel not to generate and maintain accounting records. Through the custom and practice of the parties, Allred relied upon Fairchild to perform the accounting. Until a dispute arose between the parties, Allred never employed an accountant to determine the status of his financial dealings with Fairchild, primarily because he trusted Fairchild to provide an honest and accurate accounting of funds. The chancellor was manifestly wrong in determining that Allred would have initially hired an accountant absent litigation. The chancery court decision is reversed.

**II. Whether the chancery court erred in finding that there was no evidence before the court to show that the accountant's fees were reasonable.**

¶14. The chancery court cites *Martin v. Martin,* 566 So.2d 704 (Miss. 1990) and

*McKee v. McKee*, 418 So.2d 764 (Miss. 1982), as guidelines for properly determining

accountant's fees. *Martin* and *McKee* specifically discuss determining the reasonableness of

7

attorney's fees in divorce cases. However, a case that appears to be more on point with the chancellor's assumption that accounting fees are determined in the same manner as attorney's fees is **Smith v. Dorsey,** 599 So.2d 529, 550 (Miss. 1992). In the **Smith** case, this Court found no abuse of discretion in the chancellor's awarding of expert fees as well as attorney's fees where taxpayers successfully challenged a school board's illegal expenditure of public funds. Inasmuch as it is appropriate to examine prior case law, i.e. **Martin** and **McKee**, it is equally appropriate to examine and apply Miss. Code Ann. § 9-1-41 which states:

> In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

Hartman is a certified public accountant who attached an affidavit which was submitted with the costs bill detailing the services he rendered. Hartman charged an hourly rate of $150 - $165 while his assistant's rate was $50 per hour. He stated that these rates were fairly conservative and reasonable for the knowledge, skill, and expertise needed to perform oil and gas accounting matters and were well within the range of fees charged by certified public accountants.

¶15.    The chancery court erred in finding that there was nothing before it to show that Hartman's fees were reasonable. But for the fraud of Fairchild, Allred would not have incurred this expense. Therefore, we reverse and render the decision of the chancery court and award Allred $79, 235.35 in costs which represents the accounting fees and expenses he incurred.

## CONCLUSION

¶16. We find that the chancellor erred in deciding that there were no exceptional circumstances that would authorize him to exercise discretion and grant accounting fees as expenses to Allred. We also find that the chancellor erred in holding that there was nothing before him to show that the accountant's fees were reasonable. For the foregoing reasons, we reverse and render the judgment of the Chancery Court of Covington County. Allred is entitled to $79,235.35 in costs.

¶17. **REVERSED AND RENDERED.**

**SMITH, C.J.,COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE OPINION. WALLER, P.J., DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**