# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00834-COA

**MICHAEL C. BAREFIELD**                                          **APPELLANT**

**v.**

**ALLEN T. BAREFIELD, JULIA JOHNSON, AND**                 **APPELLEES**
**SHARON BAREFIELD, INDIVIDUALLY AND**
**ON BEHALF OF HERITAGE INVESTMENTS**
**GROUP, INC.**

DATE OF JUDGMENT:                    07/21/2022
TRIAL JUDGE:                         HON. SANFORD R. STECKLER
COURT FROM WHICH APPEALED:           FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:              WILLIAM H. JONES
ATTORNEY FOR APPELLEES:              RENEE M. PORTER
NATURE OF THE CASE:                  CIVIL - TORTS-OTHER THAN PERSONAL
                                     INJURY & PROPERTY DAMAGE
DISPOSITION:                         AFFIRMED - 12/12/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD, LAWRENCE AND SMITH, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Allen Barefield, Julia Johnson, Sharon Barefield, and Michael Barefield were family members and owners of Heritage Investments Group Inc., which was created to invest in real estate. Allen, Julia, and Sharon, individually and on behalf of Heritage, filed suit against Michael alleging that he failed to pay Heritage's federal taxes and that he mismanaged, misused, and misappropriated Heritage's funds. The parties eventually agreed to settle and resolve all issues between themselves by having Michael divest himself of all interest in Heritage and property ownership and disburse any existing funds amongst the members. The agreed order of settlement reserved one outstanding issue for the chancery court to

decide—who was to pay an outstanding bill of Steven Dockens, a forensic accountant who performed investigatory accounting services during the litigation. The court allowed briefing on the issue and ultimately ordered Michael to pay the outstanding bill of the forensic accountant. From that judgment, Michael appeals. Finding no error, we affirm.

## FACTUAL BACKGROUND

¶2. Allen Barefield, Julia Johnson, Stone Barefield, and Michael Barefield were equal shareholders of Heritage Investments Inc. In 2013, Stone Barefield died, and his wife Sharon inherited his interest. Heritage was a Mississippi corporation, incorporated in 1992 and engaged in investing in real estate.

¶3. Initially, Heritage endorsed a person not related to them to oversee the "financial records" of the business, but in 2008, Michael assumed "responsibility" for the financial matters, including the payment of taxes. The state and federal taxes Heritage owed were not paid, and the Secretary of State eventually dissolved Heritage. The family members reinstated the business and changed the name to Heritage Investments Group Inc.

¶4. On January 30, 2020, Allen, Julia, and Sharon filed a complaint in the Forrest County Chancery Court. The complaint alleged that Michael, who was responsible for the corporation's financial matters, had "misused and misappropriated" large sums of money for his "personal use and for his personal business use outside of Heritage." The complaint requested an "accounting at the expense of the defendant" (Michael) for all expenditures so any "improper payments" could be determined.

¶5. On March 11, 2020, Michael filed his answer to the complaint. He essentially denied

2

any improper use of business funds and asserted that he did not have "any obligation" to file the state and federal taxes. Further, Michael denied the allegation that he assumed financial responsibility for Heritage. Michael even went so far as to deny that the Secretary of State dissolved the corporation for failure to pay taxes and that $63,932.36 was owed to the IRS.

¶6. On October 23, 2020, Allen, Julia, and Sharon filed a "Motion for Forensic Audit." The motion informed the court that the complaint alleged "financial wrong doing by the defendant." Further, the motion alleged that Michael had blamed others, including Larry Johnson, for Heritage's financial difficulties. The motion reaffirmed that the parties were seeking the dissolution of Heritage, a determination of the "assets or debts" of Heritage, and "what apportionment of shares and assets are due to each party" in the lawsuit. The motion did not mention the name of any particular accountant who needed to be appointed or who would be responsible for the payment of the forensic accountant's services.

¶7. At some point, Steven Dockens was retained as the forensic accountant. The record on appeal is not clear as to who actually retained Dockens. The record offers mere glimpses and speculation through emails and correspondence between the parties. There is no written court order appointing Dockens. There is no transcript of a hearing where the court approved the appointment of Dockens. The parties offer different arguments and point to various unofficial court records as proof of their respective positions. Since this is the only issue on appeal, additional facts will be discussed in our analysis below.[1]

---

[1] The court apparently held a hearing on December 8, 2020, on the motion to appoint a forensic accountant, with the court actually appointing Christy Pickering. Both parties admit this fact in their briefs, but the transcript for that hearing is not included in the record on appeal. Emails between the parties indicated that Christy Pickering could not perform

¶8. On February 21, 2021, Michael filed a motion for permission to file a "third party complaint" against Larry Johnson (Julia's husband) alleging his business actions were the cause of Heritage's financial difficulties. During a June 11, 2021 hearing on Michael's motion to file the complaint against Larry, a transcript was made. Larry later filed a motion to dismiss that complaint and attached a small portion of that transcript. During arguments at the June 11, 2021 hearing, the parties discussed the issue of whether extra costs for the forensic accountant would be incurred if the third-party complaint was allowed. Michael stated, "[S]he said they were going to pay it and we would settle up later on who owed what. I've never refused to pay anything, your Honor." The third-party complaint and Larry's motion to dismiss were added by the parties as a supplement to the record on appeal in this case.[2]

¶9. Prior to trial, the parties reached a settlement agreement on all issues except who was to pay for Dockens's services. An agreed settlement order was presented to the court, and the court entered that order on June 22, 2022. The "Agreed Settlement Order" specifically stated, "The court finds that the parties have agreed that the issue of responsibility for payments to Steven Dockens, CPA, for the Forensic Accounting shall be submitted to the court for decision."

---

the services and that she recommended Dockens be appointed.

[2] The entire transcript of the June 11, 2021 hearing was not part of the record on appeal. The small portion of the transcript included was attached to the motion to dismiss in support of Larry's argument that Michael failed to file the third-party complaint within ten days as ordered by the court. The portion of the transcript detailing the argument against granting Michael permission to file due to increased expert costs was a mere coincidence.

4

¶10.   Further, on June 22, 2022, the court held a telephonic conference with the parties to discuss the settlement agreement.  At that conference, Michael requested thirty days to file a brief on his objections to paying the forensic accountant fees.  The court agreed and allowed thirty days for the parties to file briefs before the court decided the issue of who would be responsible for the payment of the fees.  During the conference, the court clarified that the payment of the expert's fees was the only remaining issue and that the parties had agreed to submit the payment issue to the court for determination.  Finally, during the conference, the parties submitted "into evidence" the written report of Steven Dockens for the court's consideration in ruling on this issue.

¶11.   Michael filed his "brief" opposing the payment of Dockens's expert fees on June 30, 2022.  He argued that Dockens was "retained" by Allen, Julia, and Sharon, and as such, he should not be responsible for paying the fees owed.  As proof of his argument, Michael pointed to the lack of a written order appointing Dockens.  Michael claimed Dockens was a privately retained accounting expert of Allen, Julia, and Sharon.

¶12.   Allen, Julia, and Sharon addressed the payment of Dockens's fees by filing a "memorandum" and alleging Dockens was a court-appointed expert.  The memorandum alleged that the court held a telephonic hearing due to the pandemic.  Attached to the memorandum, among other documents, was a proposed unsigned order drafted by Allen, Julia, and Sharon's attorney and sent to Michael for his signature.  Michael did not sign the proposed order, but it contains his handwritten notes and proposed corrections.  Allen, Julia, and Sharon also attached an email chain purportedly indicating that the court did indeed

appoint an accountant, but Michael claimed it was Christy Pickering and not Dockens.

¶13.    On July 21, 2022, the Court entered a written order specifically stating that it "indeed order[ed] a forensic accounting in this matter and said accounting was ultimately undertaken and effectuated by Steven Dockens, CPA." The court indicated that Dockens's written report had been filed with the court and "entered into evidence without objection." The court found that Dockens's fees of $8,548.45 were reasonable and that his services were helpful in resolving the issues before the court. Finally, the court ordered Michael to pay Dockens's expert fees of $8,548.45. The court indicated that since Julia previously paid the fees, Michael was to reimburse her. From that order, Michael appeals.

## STANDARD OF REVIEW

¶14.    "We will not disturb the findings of a chancellor unless they are manifestly wrong, clearly erroneous, or emanate from the application of an improper legal standard." *Nichols v. Funderburk*, 883 So. 2d 554, 556 (¶7) (Miss. 2004); *Young v. O'Beirne*, 147 So. 3d 877, 884 (¶20) (Miss. Ct. App. 2014). "[F]or questions of law, the standard of review is de novo." *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000). The chancellor's "interpretation and application of the law is reviewed under a de novo standard." *Id*. (citing *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001); *In re Carney*, 758 So. 2d 1017, 1019 (¶8) (Miss. 2000)). This Court reviews the decision to impose monetary sanctions against a party for abuse of discretion. *See In re Spencer*, 985 So. 2d 330, 336-37 (¶19) (Miss. 2008). "In the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant

6

factors, the judgment of the court's imposition of sanctions will be affirmed." *Wyssbrod v. Wittjen*, 798 So. 2d 352, 357 (¶17) (Miss. 2001).

## ANALYSIS

¶15.    Michael argues that the chancellor erred in ordering him to pay the full accountant fees of $8,548.45.  First, he alleges that the accountant was not a court-ordered expert but rather an expert "retained" by the Appellees.  As such, he contends, the Appellees should be responsible for their own costs of litigation.  Michael points to the absence of any written order appointing Dockens in the record as evidence that the chancellor never actually appointed him, and Michael asserts that finding he was appointed after the fact was error. Further, he argues if Dockens was retained by the Appellees, then the chancellor erred by ordering Michael to pay his fees because he did not find any exceptional circumstances, as required by Mississippi Supreme Court precedent.

¶16.    Allen, Julia, and Sharon counter that the court appointed Dockens.  They point to a proposed order that was never entered, but upon which Michael handwrote corrections.  The order is proof the court actually ordered the appointment of a forensic accountant.  However, Michael argues that the order appointed Christy Pickering, a forensic accountant from another accounting firm.  Emails attached to Allen, Julia, and Sharon's memorandum indicate Christy could not perform the work, so she recommended Dockens.  Thus, the questions in this appeal are whether a chancellor has the authority to appoint a "court expert" to investigate the issues before the court, and whether the court can order the parties to pay this expert.  The other question raised is if Dockens was not a court-appointed expert but was

7

retained by a party, did the chancellor have the authority to order one party to pay the expert fees of another party? Two rules provide guidance with the answers to these questions.[3]

¶17. Mississippi Rule of Evidence 706 deals with court-appointed expert witnesses. The rule allows the court to appoint an expert witness "on a party's motion or on its own." The rule states that "the court may appoint any expert that the parties agree on and any of its own choosing." However, as applicable in this case, the rule also states that "the court may only appoint someone who consents to act." Finally, the rule affirms that "the expert is entitled to a reasonable compensation, as set by the court," and shall be paid "by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs."

¶18. Further, Mississippi Rule of Civil Procedure 54(e) provides for assessments of costs to the prevailing party. Rule 54(e) of the Mississippi Rules of Civil Procedure is patterned after former Federal Rule 54(d), and states in part: "Except when express provision therefor[e] is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Further, the comment to Rule 54 states, "Absent a special statute or rule, or an exceptional exercise of judicial discretion, such items as attorney's fees, travel expenditures, and investigatory expenses will not qualify either as statutory fees or reimbursable costs. These expenses must be borne by the litigants."

---

[3] The chancery court did not cite either rule or any caselaw as precedent in its order determining that Michael should pay Dockens's entire fee. However, the chancery court did indicate in a post hoc order that Dockens was a court-appointed expert. That would lead to the inescapable conclusion that the issue in this case should be resolved pursuant to Rule 706 of the Mississippi Rules of Evidence.

¶19.     *In re Estate of Hart*, 20 So. 3d 748, 756-57 (¶26) (Miss. Ct. App. 2009), involved Jim Koerber, a certified public accountant who was appointed as an expert by the chancery court to gather documentation relating to Hart's assets and make a report of his findings to the court regarding certain transactions.   A dispute arose as to who was to pay for the accountant's court-mandated work.  *Id.*  The trial court ordered the appellants to pay all of the costs.  *Id.*  On appeal, the Court of Appeals relied on Mississippi Rule of Evidence 706(b) stating, "compensation [for the court-appointed expert] shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs."  *Id*. at (¶27) (quoting MRE 706(b)).  "The assessment of court costs is within a chancellor's sound discretion; however, as a general rule, the costs of court should be assessed against the losing party."  *Id*. (citing *Leaf River Forest Prods. Inc. v. Rowell*, 819 So. 2d 1281, 1285 (¶15) (Miss. Ct. App. 2002)).  Further, this Court noted that the Appellants filed a motion to have an independent auditor appointed by the chancery court.  *Id.*  The Appellants in that case stated in the motion that it was "requested that the auditor be compensated pursuant to Rule 706."  *Id.*  This Court reasoned that the Appellants were certainly aware that the chancery court "had the authority to direct them to pay the expenses" of the court-appointed expert.  *Id.*  The Court concluded that "the chancellor did not err in ordering the Appellants to pay all the incurred charges by the court-appointed auditor."  *Id.* Rule 706 and *In re Hart* seem clear—the chancellor had the authority to appoint a forensic accounting expert and determine who was to pay the costs associated with such an appointment.

¶20. Here, Michael relies on *Allred v. Fairchild*, 916 So. 2d 529, 530 (Miss. 2005), in support of his argument that the chancellor erred in ordering him to pay the entire fee of Dockens. In *Allred*, a suit was brought against Fairchild for enforcement of commission agreements in oil wells Allred alleged existed between him and Fairchild. *Id*. at (¶¶1-2). Allred alleged Fairchild owed him ten-percent commission in a certain oil well's production. *Id*. at (¶2). After the first trial, the chancellor held Allred was not entitled to any relief; Allred appealed. *Id*. at (¶3). The supreme court reversed and remanded. *Id*. at (¶4). After a second trial, the chancellor determined and awarded Allred damages in the approximate amount of $6,000,000.00 dollars. *Id*. Allred filed a motion for costs and asked the court to award him reimbursement for $79,858.39 in "fees" paid to an oil and gas accountant he retained in the case. *Id*. The chancellor denied the costs finding "no exceptional circumstances" which would justify "Allred's recovery of the fees paid." *Id*. at 530-31 (¶5). Allred appealed the denial of his accountant fees. *Id*. at 531 (¶5).

¶21. The supreme court ultimately determined that Fairchild's actions in denying Allred the commissions were "riddled with fraud and deception." *Id*. at 532 (¶11). Further, the court determined that Fairchild abused the "confidential relationship" between him and Allred, and the chancellor erred in not finding exceptional circumstances under the Mississippi Rules of Civil Procedure. *Id*. at 532, 534 (¶¶11, 16). The supreme court found the $79,585.35 fee for the accountant was reasonable and ordered Fairchild to pay Allred's costs. *Id*. at 534 (¶16).

¶22. Michael attempts to use *Allred* offensively to vitiate the order requiring him to pay the

forensic accountant's fees. Michael asserts that the chancellor never found "exceptional circumstances" that must be found according to the comment to Rule 54(e) and the *Allred* case. Michael's attempt is misguided. First, the chancellor clearly considered Dockens to be a court-appointed expert, not an expert retained by a party as in *Allred*. The chancellor's order states as much. Second, Allred's award of expert fees occurred after a trial with a clearly "prevailing party." Third, there is no indication that the chancellor ordered Michael to pay Dockens's fee under Rule 54. Again, the chancellor's written order indicated that the court ordered a forensic accounting which would place the authority to pay the expert under Mississippi Rule of Evidence 706, *not* Mississippi Rule of Civil Procedure 54. Finally, Michael asks this Court to reverse the chancellor under a case that interpreted Rule 54. For that to work, he asks this Court to declare that no particular party was "prevailing" in the settlement and that there are no exceptional circumstances that would justify the exercise of judicial discretion in the payment of the costs.[4] To do as Michael has requested would entail this Court making a factual determination on two fronts: who prevailed, and are there exceptional circumstances? But to do so would broaden this Court's function beyond that which is permitted. Indeed, "this Court is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Rogers v. Morin*, 791 So. 2d 815, 826 (¶39) (Miss. 2001) (quoting *Newsom v. Newsom*, 557 So. 2d 511, 514

---

[4] Michael apparently claims that all parties to the settlement received disbursements for their respective ownership interests in the properties. Therefore, as the argument goes, no one prevailed as required under Mississippi Rule of Civil Procedure 54. However, without the lawsuit filed by Allen, Julia, and Sharon, which, in part, requested a forensic accounting and without the findings of the forensic accounting, it would be exceedingly suspect whether such disbursement could have occurred.

11

(Miss. 1990)).

¶23.    Finally, assuming for purposes of argument only that the chancery court made its ruling under Mississippi Rule of Civil Procedure 54, instead of Mississippi Rule of Evidence 706 as Michael asserts through his cite of the *Allred* case, the chancery court noted in its written order that the forensic accounting report of Dockens was entered into evidence. That report indicated that in 2008 Michael "solely assumed responsibility of the financial records and all financial accounts of Heritage." Further, the report listed many financial irregularities and difficulties since that date. The report stated Michael "directly benefitted from the use of $68,670.00 of cash from Heritage" most of which were withdrawals or payments "on his behalf." The report also listed that the shareholders incurred approximately $59,880.00 in fees, interest, and penalties from delinquent property taxes not paid by Michael. Additionally, the shareholders incurred $46,548.00 in losses from the sale of certain properties by Michael, and they incurred $78,653.00 in lost rental income. The court found in its order that the sums Michael paid to Allen, Julia, and Sharon "closely approximate[] the sums set forth in the forensic accounting report." The court continued that Michael "admitted that he 'borrowed' funds from the family business." Those findings of fact substantiate that the chancellor found Allen, Julia, and Sharon were the "prevailing" parties and that exceptional circumstances existed justifying the ordering of Michael to pay costs according to Rule 54.

¶24.    Michael argues the chancellor was manifestly wrong in making those findings of facts. But as mothers frequently tell their children, "you cannot have your cake and eat it too."

12

Michael argues the chancellor did not make any factual findings amounting to exceptional circumstances, but if he did, then they were factually wrong. Since there is substantial proof in the record to support the factual findings of the chancellor, we decline to second-guess the chancery court's findings. *Cox v. Upchurch*, 301 So. 3d 69, 73 (¶13) (Miss. Ct. App. 2020) ("If there is substantial evidence in the record to support fact-findings, no matter what contrary evidence there may also be, the appellate court will uphold the chancellor." (quoting *Belding v. Belding*, 736 So. 2d 425, 427 (¶5) (Miss. Ct. App. 1999))). Nor will we substitute our judgment on those facts in a way different from the chancellor when he is the trier of fact, not this Court. *See id*. ("This Court does not re-evaluate the evidence, re-test the credibility of witnesses, nor otherwise act as a second fact-finder." (quoting *Belding*, at 427 (¶5))). We find this issue is without merit.

## CONCLUSION

¶25. In summary, the chancery court prepared an order that, under the circumstances, appointed Dockens as an expert, making him a court-appointed expert. The appellate courts of this State trust chancellors to make factual determinations based on the evidence and law before them and rule on complex litigation every day. There is no reason not to believe a chancellor who writes that "the court did indeed order a forensic accounting." Under Mississippi Rule of Evidence 706, the court had the authority and discretion to order the payment of the court-appointed expert's fees. We find no abuse of that discretion when the court ordered Michael to pay those fees since the court found his actions necessitated the lawsuit and the need for an accountant. Further, even if Michael is correct and the court

13

ordered the expert fees to be paid under Mississippi Rule of Civil Procedure 54, the court's findings of facts sufficiently met the requirements under the Rule by ordering costs in the "exceptional exercise of judicial discretion."

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**