LADNER, et ux. *v.* HARSH.

No. 41507          May 23, 1960          120 So. 2d 562

*Upton Sisson, Jo Drake Arrington,* Gulfport, for appellant.

*Floyd & Holleman,* Wiggins, for appellee.

Lee, J.

Council Ladner and his wife, Lettie D., proceeding under the provisions of the Real Estate Brokers License Act of 1954, Sections 8920-01, et seq., Code of 1942 Rec., sought to recover from James N. Harsh the sum of $3,-600, being the amount of a commission, to-wit, $900, paid to him for the sale of land, owned by the Ladners, as described in the declaration, plus the sum of $2,700 as a penalty for the violation of said act. The issue was properly joined. At the conclusion of the evidence, the court refused the plaintiffs' requested peremptory instruction to find for them. The cause was submitted to a jury, who found a verdict for the defendant. The plaintiffs then moved the court for a judgment for them notwithstanding the verdict, or in the alternative, the grant of a new trial. This motion was overruled. From the final judgment, entered in accordance with the verdict of the jury, the plaintiffs appealed.

James N. Harsh was president of the Whitney Realty Co., Inc., with offices in New Orleans, and was duly licensed as a real estate broker or salesman in the State of Louisiana. He was not licensed as such in this state. He owned a substantial tract of land, known as Red Gap Ranch, in Stone County, adjacent to a large tract of land owned by the plaintiffs, who were desirous of selling their property. The parties were good friends. Harsh, in the presence of Ladner, had telephoned a real estate man in Gulfport in an effort to enlist his aid in finding a purchaser for Ladner's property, but without success. Several days later, while Harsh was having lunch at the Roosevelt Hotel, he saw a friend, Jimmy Beeson, who appeared to be interested in this land and expressed the desire to see it. Harsh thereupon called Ladner over the telephone, told him about this conversation with Beeson, with the result that Ladner seemed to be elated. The next weekend, Beeson went to Stone County to look at the property, at which time, he visited Harsh at his ranch.

Ladner went to the ranch, picked up Beeson, and drove him over the property. W. J. Blass and Jack Parsons owned 110 acres, lying partly between the Harsh and Ladner properties, and Beeson wished to acquire that acreage also. He offered to pay $22,500 for both places, namely, $19,200 for the Ladner place and $3,300 for the Blass and Parsons land. That afternoon Ladner contacted Blass, who was willing to go through with the deal. The sale was tentatively agreed upon. Either at that time or shortly thereafter, when Beeson was in doubt as to whether to carry out the transaction because of a dust hazard and other causes, Harsh agreed to let him have five of his acres. In this way complete satisfaction on the part of Beeson was effected.

At the office of Blass, in the town of Wiggins, in Stone County, on September 18, 1958, the Ladners, James E. Beeson, and W. J. Blass and Jack Parsons signed and acknowledged an agreement of purchase and sale in accordance with the tentative agreement which had already been made. Harsh admitted that he was present when this instrument was executed.

On November 29, 1958, the sale was closed in the office of Blass when the sellers executed and delivered the necessary deeds of conveyance to the purchaser, and the considerations were paid over to the grantors. Harsh was present, and a controversy arose over his commission. However, the Ladners finally agreed, and a few days later, Blass either sent or delivered his check to Harsh in the sum of $900 in payment of the amount which was claimed as a commission for making the sale.

The above facts are not in dispute. Harsh admitted practically this entire version. The plaintiffs testified however that they were under the impression, until the money was paid over, that Harsh was representing Beeson.

The appellee contends that the evidence fails to show that he acted as a real estate broker or salesman in this state. He maintains that all of his actions were perform-

ed in Louisiana; and that he did not violate the provisions of the Mississippi Act of 1904.

The appellants, on the other hand, contend that they were entitled to a directed verdict in their behalf.

By Section 8920-01, Code of 1942 Rec., it is made "unlawful for any person, partnership, association or corporation to engage in or carry on, directly or indirectly, or to advertise or to hold himself, itself, or themselves out as engaging in or carrying on, the business, or act in the capacity of, a real estate broker, or a real estate salesman, within this state, without first obtaining a license as a real estate broker or real estate salesman as provided for in this act."

By Section 8920-02 thereof, the term "real estate broker", as applicable here, is defined as follows: "(a) The term *'real estate broker'* within the meaning of this act, *shall include all persons,* partnerships, associations and corporations, foreign and domestic, *who for a fee,* commission, or other valuable consideration, *or who with the intention or expectation of receiving or collecting the same,* lists, *sells,* purchases, exchanges, rents, leases appraises, or auctions *any real estate,* or the improvements thereon including options, *or who negotiates or attempts to negotiate any such activity;* or who advertises or holds himself, itself or themselves out as engaged in such activities; *or who directs or assists in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction;* or shall negotiate or attempt to negotiate a loan secured or to be secured by mortgage or other encumbrance upon a tranfser of any real estate." (Emphasis supplied).

Section 8920-06 thereof provides the method by which a nonresident may qualify.

Section 8920-16(a) thereof provides the several penalties which may be imposed upon convictions for violations of the act.

Section 8920-16(b) provides as follows: "In case any person, partnership, association or corporation shall

have received any sum of money, or the equivalent thereto, as commission, compensation or profit by or in consequence of his violation of any provision of this act, such person, partnership, association or corporation shall also be liable to a penalty of not less than the amount of the sum of money so received and not more than four times the sum so received, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction.''

It is clear that Harsh was the moving spirit in the negotiation of this sale. The question for determination is, where did he arrange to make the sale of this property? Was it in Louisiana or in Mississippi? If it occurred in Mississippi, he was not entitled to a commission, under the law as set out above, because he was not licensed in this state.

Now, he first interviewed Beeson at the Roosevelt Hotel in New Orleans. Later, as Beeson was wavering because of the inconvenience of dust and the moving of a well, Harsh agreed, in Louisiana, to let him have several acres of land, thus removing that obstacle.

██ █ But the negotiations between the parties began when Harsh introduced them at his ranch in Stone County, Mississippi. Assuming therefore that he was representing the Ladners, he was under the duty, as a real estate broker, to produce a purchaser ready, willing, and able to buy. Skermetti Realty Co. v. Devitt, 145 Miss. 815, 111 So. 302; Roell v. Offutt, 138 Miss. 599, 103 So. 237; Jenny v. Smith-Powell Realty Co., 125 Miss. 608, 88 So. 171; Cook v. Smith, 119 Miss. 375, 80 So. 777; Johnson v. Sutton, 94 Miss. 544, 49 So. 970.

A logical step in that direction, after a tentative agreement had been reached, would be the execution of a written contract to that effect. Besides it has been held that such a step is a necessary part of the broker's duty. Lavecchia v. Reed, 174 Miss. 9, 163 Miss. 681. See also Tonkel v. Moore, 162 Miss. 83, 137 So. 189; 12 C. J. S.,

Brokers, Section 84 p. 185. Cf. Partee v. Pepple, 197 Miss. 486, 20 So. 2d 73.

Harsh was present in the law office of Blass when the parties signed and executed this contract. He certainly was not a disinterested observer at that time, but on the contrary was taking the precaution to see that the parties did not back down from their agreement.

Besides Harsh was also present in the office of Blass on November 29, 1958, when the deed was executed and the money or its equivalent was paid over, thus complying with his duty and proving that he had produced a purchaser who was ready, willing and able to pay for the property. Neither was he a disinterested observer at that time. Then it was that he insisted on the payment of his commission, and was finally successful in getting the consent of the Ladners for payment. Following that agreement, Blass retained $900 of the purchase price of the Ladner land and subsequently delivered the same to Harsh.

Thus the essential acts for the consummation of the sale by Harsh were performed in this state. However, it was only necessary that the plaintiffs should show that Harsh, in this state, negotiated or attempted to negotiate such sale, or directed or assisted in procuring a purchaser or prospect calculated or intended to result in such real estate transaction.

Not having been licensed in this state, the acts of Harsh were unlawful; and being unlawful, he had no right to collect a commission. But, having collected the same, he was subject to suit for its recovery and for the penalties provided for in the statute. Consequently the appellants' requested peremptory instruction should have been given.

The appellants, in their brief, have expressly agreed and bound themselves to accept $900 in full satisfaction of their claim against the appellee, waiving any right which they may have to further damages. The amount of $900 is the least sum for which a jury could find a

verdict; and since the appellants now waive any right to a sum in excess of that amount, the judgment of the trial court is reversed and a final judgment will be entered here for the appellants against the appellee in the sum of $900 with interest thereon from this date until paid, together with all costs.

Reversed and judgment here for the appellants.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.