937 So.2d 964 (2006)
Timothy LEARY d/b/a Timothy Leary Real Estate, Appellant
v.
David STOCKMAN, Kevin Bzoch, Tonya Zimmern, Danny Zimmern, Stockman & Co., Inc., Remax Southern Realty and Scoggins Realty, Appellees.
No. 2005-CA-01514-COA.
Court of Appeals of Mississippi.
September 12, 2006.
*965 William Carl Miller, Biloxi, attorney for appellant.
Arthur F. Jernigan, Samuel Ernest Linton Anderson, Ridgeland, attorneys for appellees.
Before LEE, P.J., CHANDLER and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. This litigation between real estate professionals arose incident to construction of a series of condominiums on the Mississippi Gulf Coast. Through his corporation, Coastal Land Development Company, Inc. (Coastal), Richard Landry attempted to establish a condominium project called Beau View Towers in Biloxi, Mississippi. Coastal eventually failed to meet its financial obligations and faced a complaint for judicial foreclosure. Coastal attempted to find alternative sources of financing, but those sources required a number of sold units as a condition precedent.
¶ 2. To that end, in October of 2002, Landry entered into a written agreement with Timothy Leary, a real estate broker licensed in Mississippi. Leary agreed to *966 sell condominium units individually or the project as a whole. In exchange, Coastal agreed to compensate Leary on a commission basis.
¶ 3. Shortly afterwards, Leary met Tonya Zimmern, a real estate agent licensed in Florida. Zimmern was aware of a group of individuals who expressed interest in purchasing the project. Leary agreed to split his commission with Zimmern, should Zimmern's group resolve to purchase the project. Ultimately, the group did not purchase the project.
¶ 4. Zimmern continued to search for potential purchasers. Through various sources, Zimmern contacted Davis Heritage, Ltd., a Florida development company. Davis Heritage was interested in purchasing the entire project. Meanwhile, the foreclosure proceedings progressed. In February of 2004, the chancellor appointed a special master to market the project for ninety days and report all offers to the chancellor and the parties. If the property did not sell by the ninety-first day, foreclosure proceedings were to begin.
¶ 5. Representatives of Davis Heritage met with Landry and negotiated a contract to purchase the project. Landry received no other offers during the ninety day period. On May 28, 2004, Davis Heritage and Coastal entered into a contract entitled "Contract for the Purchase and Sale of Real Estate." The contract provided brokerage fees for four percent of the sale price; one percent each to Stockman, Bzoch, Tonya Zimmern, and Danny Zimmern. The chancellor ratified the contract.
¶ 6. Leary sued Zimmern, among others. Leary alleged that he and Tonya Zimmern had an agreement to split any commission that resulted from the sale of the project. Additionally, Leary alleged that Zimmern and the other Davis Heritage representatives violated the Mississippi Real Estate Brokers Act when they conducted a real estate transaction without using a Mississippi broker. Leary sought brokerage fees and penalties as a "person aggrieved" pursuant to Section 73-35-31(2) of the Mississippi Code.
¶ 7. Among other things, the chancellor found that Leary lacked standing to qualify as a "person aggrieved" and that Leary was not entitled to recover under the Mississippi Real Estate Brokers Act. The chancellor also found that Leary failed to prove that he and Zimmern had an agreement to split commissions. Aggrieved, Leary appeals and raises three issues, listed verbatim:
I. WHETHER THE CHANCELLOR'S FINDING THAT LEARY AND ZIMMERN HAD NO CO-BROKERAGE AGREEMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THUS MANIFESTLY WRONG.
II. WHETHER THE ACT OF ONE CO-BROKER SHOULD REDOUND TO THE BENEFIT OF THE OTHER CO-BROKER.
III. WHETHER LEARY WAS AN AGGRIEVED PERSON UNDER MISS. CODE ANN. § 73-35-31 AND THUS WAS ENTITLED TO PURSUE STATUTORY PENALTIES AGAINST THE FOREIGN BROKERS.
Finding no error, we affirm.

FACTS
¶ 8. In 2000, Richard Landry, the president and sole shareholder of Coastal Land Development Company, commenced development of the Beau View Towers condominium project (the project) in Biloxi, Mississippi. Coastal acquired several parcels of land, secured financing, and began construction. Landry hired Keiko Palmero as Coastal's director of marketing.
*967 ¶ 9. After the attack on the World Trade Center on September 11, 2001, Coastal's construction lender withdrew its financing commitment. Coastal defaulted to its creditors and contractors, one of whom filed a complaint and sought foreclosure. That complaint became a case in the Second Judicial District of the Harrison County Chancery Court, styled as Roy Anderson Corp. v. Coastal Land Development Co., C2402-01-01055. Coastal attempted to find alternative sources of financing, but Coastal found itself in a "Catch-22" of sorts. Those lenders required at least sixty-five to seventy per cent of the units of the first tower of the multiple tower project to be pre-sold before they would issue commitments to make construction loans. At the same time, Coastal could not close sales on units without the security of definite financing.
¶ 10. In July of 2002, Landry met with Timothy Leary. On October 4, 2002, Landry and Leary entered into a written listing agreement to sell reservation agreements for individual condominium units so that Landry could obtain additional financing. Landry provided Leary with a five per cent commission on the sale price of any individual unit, a weekly draw on these commissions in the amount of $1,000 for sixteen weeks, and an agreement to negotiate a commission if Landry procured the sale of the entire project. The agreement allowed either party to terminate the agreement with sixty days written notice. Neither party ever gave written notice of termination. Landry testified that he never terminated the agreement.
¶ 11. During late 2002 or early 2003, Tonya Zimmern, an agent with Coldwell Banker JME Realty, a real estate company in Florida, visited the Beau View Towers sales trailer and met with Leary. Leary testified that Zimmern responded to an advertisement he placed in a publication called the Destin Log. Zimmern testified that she was not aware of any advertisement. Rather, Zimmern testified that she worked for a nearby condominium project, that she wanted to see "the competition," and that she was curious about the project. Zimmern held a real estate agent's license in Florida, but she was not licensed in Mississippi.
¶ 12. In any event, during that initial meeting, Leary and Zimmern discussed Leary's commission agreement with Landry. Leary and Zimmern agreed that Leary would pay Zimmern or her Florida brokerage two and a half percent of the sales price for any units that produced sales. Leary downloaded a form for a cooperating brokerage agreement from the Mississippi Real Estate Commission's web site and faxed the agreement to Zimmern's attention at her Florida brokerage. Zimmern never returned a signed copy of the agreement.
¶ 13. Zimmern first produced a group of potential purchasers, collectively called the "Nieman Group." The Nieman Group negotiated for the purchase of thirty-four units. The group agreed to sign the documents at the Mississippi site. Zimmern accompanied them. The Nieman Group agreements never came to fruition because Landry was never able to secure the necessary construction financing.
¶ 14. Leary and Zimmern continued to seek out potential sales. However, Coastal faced an increasingly difficult financial outlook. Trial testimony described the Towers project as "floundering" at this point. Eventually, Landry was unable to pay Leary. Zimmern alluded to the fact that Landry fired Leary, though Leary disputed that and Landry denied it outright. In any event, it was undisputed that Leary stopped operating the Coastal sales trailer on a daily basis during the Spring of 2003.
*968 ¶ 15. In the meantime, Zimmern left Coldwell Banker and transferred her license to Scoggins Realty. Zimmern brought another group of potential purchasers to Coastal. According to Leary, Zimmern did not inform him of that subsequent attempt at a transaction.
¶ 16. Leary testified that, sometime in January of 2004, at Zimmern's request, he gave Zimmern information about John Case, the contractor who was to build the condominium towers and the first mortgage holder on the property. According to Leary, Zimmern stopped taking his phone calls afterwards. Zimmern testified that she became aware of Case after her ex-husband, Danny Zimmern, ran a title search on the Towers property.
¶ 17. Regardless, Zimmern arranged a meeting between Case and Davis Heritage, a group of potential joint investors. Davis Heritage employed Stockman & Company, a Florida-based company, to procure projects such as Beau View Towers. In January of 2004, Case met with Stockman personnel, David Stockman and Kevin Bzoch, as well as Tonya Zimmern, Danny Zimmern, and Lee Leonards all Florida real estate brokers and/or agents that represented Davis Heritage. The purpose of the meeting was to ascertain whether the Davis Heritage group could enter into a joint venture with Landry on the Beau View Towers project.
¶ 18. On February 20, 2004, incident to the judicial foreclosure proceedings, the chancery court issued an order and directed that Beau View Towers be placed on the market for ninety days for commercial sale. The chancellor appointed Charliene Roemer as special master to market the property. The chancellor directed Roemer to report all offers to the court and to all parties to the foreclosure action. If the property did not sell within the ninety day period, the foreclosure proceedings were to commence on the ninety-first day.
¶ 19. After the chancellor's order, Davis Heritage abandoned plans to joint venture with Landry. Davis Heritage pursued purchase of the entire project and entered negotiations with Landry. No other offers were made to purchase the property during the ninety day marketing period.
¶ 20. On May 28, 2004, Davis Heritage and Landry entered into a "Contract for the Sale and Purchase of Real Estate." That contract provided for brokerage fees of four percent of the purchase price of $18, 984,207 ($759,368) to be paid as follows: one percent to David Stockman of Stockman & Co., one percent to Kevin Bzoch of Stockman & Co., one percent to Tonya Zimmern of Southern Remax Realty, and one percent to Danny Scoggins of Scoggins Realty.
¶ 21. On June 9, 2003, the chancery court entered an order and ratified the contract. The chancery court was unaware that the brokers who were to be paid commissions were not licensed in Mississippi.
¶ 22. On August 12, 2004, the sale closed. On that same date, the parties who expected commissions executed a document titled "Acknowledgment Regarding Brokerage Fees." By that document, the closing agent was directed to disburse the full amount of the commission to Stockman & Co. for further disbursement pursuant to the understanding of the parties to the acknowledgment.
¶ 23. On that same date, the parties named in the contract to receive commissions, as well as James Scoggins, broker of Scoggins Realty, and Brad Shoults, broker of Remax Southern Realty, executed a document entitled "Acknowledgment Regarding Dispersment [sic] of Brokerage Fees." By that document, Lee Leonard, an *969 agent who worked under Tonya at Remax, was to receive $40,000 while Danny Zimmern, Tonya Zimmern, David Stockman, and Kevin Bzoch were each to receive one percent of the remaining balance $179,842 each.
¶ 24. Leary was never paid any commission for the sale. None of the brokers and agents who received commissions were licensed by the State of Mississippi. The foreign brokers and agents discussed whether a Mississippi broker would be necessary. They came to the conclusion that they were not required to use a Mississippi broker.

PROCEDURAL HISTORY
¶ 25. On August 2, 2004, Leary filed a complaint in the Second Judicial District of the Harrison County Chancery Court. Leary named seven defendants: David Stockman, Kevin Bzoch, Tonya Zimmern, Danny Zimmern, Stockman & Co., Inc., Remax Southern Realty, and Scoggins Realty. Leary alleged that the defendants violated the portion of the Mississippi Real Estate Brokers Act that bars unlicensed foreign real estate brokers from receiving commissions where they do not cooperate with a properly licensed Mississippi real estate broker.
¶ 26. Leary amended his complaint on August 26, 2004, and again on December 15, 2004. In his second amended complaint, Leary alleged that he and Tonya Zimmern entered into a cooperating broker's agreement with a common goal of sale of either individual units of a condominium project called Beau View Towers in Biloxi, Mississippi, or the sale of the entire condominium project. Leary also alleged that after the sale of the entire project, each of the defendants, none of whom were licensed to act as real estate brokers in Mississippi without his presence as a cooperating licensed Mississippi broker, received real estate commissions in violation of Mississippi law. According to Leary, he was an aggrieved person under the applicable statute because the defendants failed to pay his commission. Leary asserted that he was entitled to his commission plus any penalty the chancery court found appropriate. Coastal filed a motion to intervene and also sought to recover against Zimmern under the Mississippi Real Estate Brokers Act. The chancery court allowed Coastal's intervention on February 24, 2005.
¶ 27. On April 13-14, 2005, the parties went to trial. Leary first called Keiko Palmero. Palmero, a real estate broker licensed in Mississippi, testified that her understanding was that Zimmern, unlicensed in Mississippi, was cooperating with Leary. Leary then called Zimmern as an adverse witness.
¶ 28. Zimmern testified that Landry paid her as the selling agent incident to a reservation agreement regarding one condominium. Zimmern also testified that she never had an agreement with Leary to sell condominium units. Zimmern conceded that she and Leary worked together on the Nieman Group, but she stated that they had no agreement beyond the Nieman Group.
¶ 29. Afterwards, Leary took the stand. Leary testified that he and Zimmern never entered into a written cooperating broker agreement, though he tried to get her to enter one. Leary also testified that he and Zimmern had a verbal agreement and that he expected to be paid after Davis Heritage purchased the project. When asked why he did not make a claim at the court ordered sale, Leary explained that he did not know who was going to purchase the project or whether he would be entitled to anything. Further, Leary testified that he did not want to interfere with the sale because he feared personal liability *970 if the sale did not reach fruition. Finally, Leary testified that Zimmern procured the Davis Heritage sale.
¶ 30. Court adjourned for the evening after Leary testified. The next morning, Leary called Richard Landry. Landry testified that he never terminated his agreement with Leary and that he did not fire Leary or lock him off the premises. Landry also testified that it was his understanding that Zimmern and Leary worked together to sell condominium units. On cross-examination, Landry testified that he did not make Leary a part of the closing because he thought Zimmern and Leary would communicate as they had been. Finally, Landry testified that he wired $5,000 for an advance on Zimmern's future commissions to Zimmern on October 9, 2003.
¶ 31. After trial, the parties submitted findings of fact and conclusions of law. On July 1, 2005, the chancellor issued his judgment. The chancellor found that Leary failed to establish standing to assert a claim as a "person aggrieved" under the Mississippi Real Estate Brokers Act. The chancellor also found that Leary failed to establish a contractual relationship between himself and Zimmern. Additionally, the chancellor also found that Leary failed to present any evidence that he was entitled to a commission on the sale and that Leary could not show that he had a reasonable expectation of financial profit from the sale. The chancellor also found that Leary was not the procuring cause of the Davis Heritage sale approved by the June 9, 2004 order. Aggrieved, Leary appeals.

STANDARD OF REVIEW
¶ 32. Our mandate requires that we decline to interfere with a chancellor's findings of fact unless the chancellor's findings are "manifestly wrong" or "clearly erroneous." Weissinger v. Simpson, 861 So.2d 984(¶ 11) (Miss.2003). Additionally, we will reverse a chancellor's decision in the event the chancellor applied an "erroneous legal standard." Id. However, we review the chancellor's interpretation and application of the law according to a de novo standard. Id.

ANALYSIS

I. WHETHER THE CHANCELLOR'S FINDING THAT LEARY AND ZIMMERN HAD NO CO-BROKERAGE AGREEMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THUS MANIFESTLY WRONG.
¶ 33. As mentioned, the chancellor found that Leary failed to establish a contractual relationship between himself and Zimmern or any other defendant. Leary claims that the chancellor's decision was against the weight of the evidence.
¶ 34. Leary submits that he transmitted an agreement to Zimmern's Florida broker but Zimmern never executed that document. It is undisputed that Leary and Zimmern never executed a written agreement. Leary maintains that he and Zimmern had a verbal agreement to split any commissions that resulted from the sale of the Beau View Towers project. Zimmern disputes that assertion. Zimmern concedes that she and Leary had an agreement to split any commissions that resulted from the Nieman Group. However, Zimmern submits that their Nieman Group agreement did not apply to any other commission that resulted. Put simply, Zimmern claims that she and Leary had no agreement to split the Davis Heritage commissions. The obvious question is whether Leary and Zimmern had an implied agreement.
¶ 35. Where a broker seeks to recover payment of an alleged brokerage contract, the broker has the burden of proving the terms of the contract. Shemper *971 v. Latter and Blum, Inc., 214 Miss. 113, 58 So.2d 359, 363 (1952). As a matter of basic contract law, the plaintiff must first demonstrate there was a mutual agreement by the parties to be bound under some duty. R.C. Const. Co., Inc. v. National Office Systems, Inc., 622 So.2d 1253, 1255 (Miss.1993) (holding formation of contract requires offer and acceptance). "The existence of an oral contract is a fact issue." Id.
¶ 36. According to the Mississippi Supreme Court, a contract for broker's services "does not have to be in writing." Hill v. Capps, 248 Miss. 601, 612, 160 So.2d 186, 190 (1964). To prove the existence of an implied contract for broker's services:
it must appear that [the broker performed such services] under . . . circumstances as to give the recipient thereof some reason to think that they were not gratuitous and not performed for some other person but with expectation of compensation from recipient, and services must have been beneficial to person sought to be made liable.
Id. "A contract to pay reasonable commission may be implied from vendor's acceptance of voluntary services of broker rendered with an expectation of payment, provided vendor knew or had reason to believe that such services were rendered with an expectation of payment." Id. "The assent of the parties in the formation of a contract must necessarily be gathered from their words, acts and outward expressions." Id.
¶ 37. Leary does not claim that a written contract existed. To demonstrate the existence of an implied contract, Leary points out that he was the broker for Landry and that Landry agreed to pay him a commission for either individual units sold or for the sale of the entire project. Leary also notes that Zimmern contacted him in January of 2004 for information that led to John Case. Leary claims that Zimmern refused to receive his telephone calls after she obtained the information she needed. Davis Heritage later met with John Case and eventually purchased the project. According to Leary, "[i]t strains credulity to think that Leary's services to Zimmern were performed with no expectation of compensation and were merely gratuitous . . . likewise it is apparent that Zimmern profited from all of the information she gathered from Leary from the first moment she met with him at the sales trailer in Biloxi to the last phone call she had with him wherein she gathered the information about John Case that the ultimate purchaser required." Zimmern submits that Leary is not entitled to brokerage fees because Leary was not a procuring cause of the sale.
¶ 38. Before a broker is entitled to a commission, he must call the purchaser's attention to the property and begin negotiations that lead to a sale. Carmichael v. Agur Realty Co., Inc., 574 So.2d 603, 608 (Miss.1990). "Absent contract to the contrary, the rule is settled that the broker's efforts need not be the sole cause of the sale, merely a predominant one." Id. "Pursuant to an implied brokerage agreement, the broker must with diligence and fidelity provide substantial services to his principalbe he seller or buyerwhich services become a substantial causal predicate to a consummated sale." Id. (internal emphasis omitted). "Where, as here, the facts are in dispute, the question whether the broker is sufficiently a procuring cause of the sale is one for the trier of fact." Id.
¶ 39. The chancellor found that Leary was not a procuring cause of the Davis Heritage purchase. We cannot conclude that chancellor erred in his finding of that fact. Leary testified that Zimmern was the procuring cause of the Davis Heritage *972 purchase. With our deferential standard of review in mind, we find that the chancellor's findings were neither "manifestly wrong" nor were they "clearly erroneous."

II. WHETHER THE ACT OF ONE CO-BROKER SHOULD REDOUND TO THE BENEFIT OF THE OTHER CO-BROKER.
¶ 40. In this issue, Leary suggests that he and Zimmern were both procuring causes of the sale to Davis Heritage. Leary states that this is a question of first impression under Mississippi law. According to Leary, Florida law is instructive on this point.
¶ 41. Leary directs us to Tassy v. Hall, 429 So.2d 30, 35 (Fla. 5th DCA 1983) and argues that a cooperating arrangement or agreement between two brokers is in the nature of a joint venture between the two professionals and, as to third parties, the acts of each broker in the pursuance of the cooperating agreement is the act of the other. Leary further asserts that where one of the cooperating brokers, while acting under such a cooperating agreement, procures a purchaser, then both brokers have been the procuring cause of the sale. According to Leary, we "should adopt the reasoning of the Florida court to find that [he] was a procuring cause of the sale because of the acts of Zimmern in pursuance of the implied cooperating brokerage agreement.
¶ 42. Zimmern does not respond to Leary's argument in that she claims her acts should not redound to Leary. Rather, Zimmern claims that Leary waived any claim he might have had to a commission and that the doctrine of equitable estoppel precludes Leary's argument because Leary did not claim a commission during the court-approved sale.
¶ 43. In turn, Leary asserts that Zimmern is barred from asserting her arguments for waiver and equitable estoppel because Zimmern did not file a cross-appeal. According to Leary, because Zimmern raised the doctrines of waiver and estoppel as affirmative defenses and the chancellor did not find that those affirmative defenses defeated his claim, then Zimmern would have to cross-appeal from the chancellor's decision in order to raise those defenses on appeal. As authority, Leary cites this Court's decision in Delta Chemical and Petroleum, Inc. v. Citizens Bank of Byhalia, Mississippi, 790 So.2d 862 (Miss.Ct.App.2001). In Delta Chemical, we declined to address the issue of the statute of limitations being a bar to an appellant's recovery because the appellee failed to raise that issue in a cross-appeal. Id. at (¶ 52) (holding that an appellee must file a cross-appeal in order to gain reversal of a trial court decision about which an appellant brings no complaint).
¶ 44. Regardless whether we find that Zimmern is precluded from asserting waiver or estoppel, in Leary's authority, Tassy, to be a co-procuring cause, there must be a finding that a cooperation agreement existed. In the issue above, we found that the chancellor did not err when he found that no cooperation agreement existed between Leary and Zimmern because Leary testified that Zimmern was the procuring cause of the Davis Heritage purchase. In light of Leary's testimony, we cannot find that the chancellor was manifestly wrong in his decision.

III. WHETHER LEARY WAS AN AGGRIEVED PERSON UNDER MISS. CODE ANN. § 73-35-31 AND THUS WAS ENTITLED TO PURSUE STATUTORY PENALTIES AGAINST THE FOREIGN BROKERS.
¶ 45. According to the Mississippi Real Estate Brokers Act, it is
unlawful for any person, partnership, association or corporation to engage in or carry on, directly or indirectly, or to *973 advertise or to hold himself, itself or themselves out as engaging in or carrying on the business, or act in the capacity of, a real estate broker, or a real estate salesperson, within this state, without first obtaining a license as a real estate broker or real estate salesperson. . . .
Miss.Code Ann. § 73-35-1 (Rev.2004). Pursuant to Miss.Code Ann. Section 73-35-31(2) (Rev.2004):
In case any person . . . shall have received any sum of money . . . as commission, compensation or profit by or in consequence of his violation of any provision of this chapter, such person . . . shall also be liable to a penalty of not less than the amount of the sum of money so received and not more than four (4) times the sum so received, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction.
¶ 46. The chancellor found that Leary failed to present any evidence that he was entitled to a commission from the Davis Heritage transaction and that Leary could not show that he had a reasonable expectation of financial profit from the sale. Consequently, the chancellor found that Leary was not an aggrieved person within the context of section 73-35-31(2). In effect, the chancellor found that Leary lacked standing to recover the statutory penalty detailed in Section 73-35-31(2). Leary appeals that decision.
¶ 47. The fundamental question in this issue is whether Leary qualified as a "person aggrieved." Leary cites to Ladner v. Harsh, 239 Miss. 46, 120 So.2d 562 (1960). In Ladner, the Mississippi Supreme Court did not necessarily examine the context of the phrase "person aggrieved." However, the supreme court did find that a foreign real estate broker was liable to sellers of property because the foreign broker was not licensed in Mississippi. Id. at 52, 120 So.2d at 565. The natural inference is that those who sell property while utilizing the services of a foreign broker may qualify as a "person aggrieved." We are aware of no authority which grants an alleged cooperating resident broker status as a "person aggrieved" where a foreign real estate agent conducts a sale without involving that resident broker. To be clear, we do not hold that such a resident broker could not qualify as a "person aggrieved." We merely note that no authority indicates that to be the case.
¶ 48. Leary claims that he qualifies as a "person aggrieved" because he had a financial interest in receiving his commission. According to Zimmern, she is exempt from Leary's assertion of section 73-35-31(2) by virtue of Mississippi Code Annotated § 73-35-3(6)(c) (Rev.2004). According to Section 73-35-3(6)(c), the Mississippi Real Estate Brokers Act does not apply to "acts of any person while acting as a receiver, trustee, administrator, executor, guardian or under court order, or while acting under authority of a deed of trust or will." Zimmern submits that she is exempt because the Davis Heritage sale occurred under the supervision of the special master appointed by the chancellor. Zimmern's assertion is not before this Court. The chancellor concluded that the sale did not close under court order and Zimmern did not appeal that decision.
¶ 49. "[R]eview of a trial court's interpretation of a statute presents a question of law; we review questions of law de novo." 32 Pit Bulldogs and Other Property v. County of Prentiss, 808 So.2d 971(¶ 8) (Miss.2002). "Our duty is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." Pope v. Brock, 912 So.2d 935(¶ 8) (Miss.2005). "Where a statute is ambiguous . . . we are *974 required to interpret it in light of various rules of statutory construction." Id. at (¶ 9). "Interpreting using the rule of statutory construction simply means we look for clues in certain time-honored rules as well as other places in order to apply the most reasonable interpretation of the statute's language and intent."
¶ 50. We interpret the statute to apply to situations in which a foreign broker or agent receives a commission from either the buyer or the seller; so that the foreign broker or agent is penalized for his unlicensed transaction. Leary's remedy was through breach of contract, rather than through the statute. Although Leary is undoubtedly "aggrieved" by the factual circumstances, that does not necessarily mean he qualifies as a "person aggrieved" by Zimmern's unlicensed real estate transaction within the context of Section 73-35-31. Rather, he was aggrieved by Zimmern's alleged breach of contract. We note that the chancellor found that Landryowner of Coastalqualified as a "person aggrieved" because Landry advanced commission fees to Zimmern when she was not a Mississippi-licensed real estate broker or agent. We cannot conclude that the chancellor erred in his interpretation of the statute. Accordingly, we affirm.
¶ 51. THE JUDGMENT OF THE SECOND JUDICIAL DISTRICT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.