ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Norma Slater Moore sued Annice Kyle, Robert M. Bailey, and the DeSoto Land Corporation (DLC) and raised numerous causes of action based on the underlying concept of misrepresentation incident to Moore’s purchase of a home. Kyle, Bailey, and DLC all successfully moved for summary judgment. Aggrieved, Kyle appeals and raises seven issues. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. This appeal evolves from the construction and subsequent sale of a home in DeSoto County, Mississippi. In January 2004, licensed builder Steve Hooker began construction of the home at issue as part of his larger speculative housing subdivision venture. As construction progressed, the home passed the first two inspections required by the DeSoto County Planning Commission (DCPC). However, later that year, Hooker filed for bankruptcy and surrendered the partially-completed home and the underlying property to the mortgage holder. At the time, there was no further progress on construction of the home. It remained partially finished for the remainder of 2004.
 

 ¶ 3. In February 2005, DLC purchased the still partially-finished home. Bailey, acting for DLC in his capacity as president of the company, retained real estate broker Kyle to act as the listing agent for the home. DLC hired Richard Brewer to complete the construction of the home, although Brewer was not a licensed builder at that time.
 
 [1]
 

 ¶4. The next month, DLC discovered that it was necessary to secure further building permits to complete construction of the home. However, because Brewer was not a licensed builder at that time, he could not obtain the necessary permit. Bailey, acting for DLC, asked licensed builder Witt Long to acquire the permit. As requested, Long obtained the permit despite his never having actively participated in the construction. Brewer, still unlicensed, completed the construction. Similarly, at Bailey’s request, Hale Electric acquired the necessary electrical permits. No one on Brewer’s construction crew was a licensed electrician. As with
 
 *378
 
 Long, Hale Electric acquired the permits, although no one from Hale Electric participated in the installation of the home’s electrical services.
 

 ¶5. On May 4, 2006, the home passed the DCPC’s final inspection. Later that month, Moore first expressed an interest in the home. Kyle drafted an initial disclosure statement on behalf of DLC and presented it to Moore. Kyle’s initial disclosure statement indicated that: (1) the home was a new construction; (2) the roof was new; (8) the home contained new appliances; (4) a one-year builder’s warranty accompanied the purchase of the home; (5) the home had been built in compliance with relevant building codes; (6) there was no evidence of rot, mildew, vermin infestation, or rodent infestation; (7) the home had never been treated for infestation; and (8) no additions, remodeling, structural changes, or other alterations had occurred during DLC’s ownership of the home.
 

 ¶ 6. On the recommendation of her real estate agent, Joel “Duck” Hawkins, on June 8, 2006, Moore had the home inspected by Randy Brassfield of Brassfield Appraisal and Inspection Services. Hawkins also recommended that Brassfield inspect Moore’s home. Brassfield’s inspection report indicated that the property was one year old. Hawkins reported that he had the same impression regarding the age of the home.
 
 [2]
 

 ¶ 7. Brassfield found no structural problems or concerns. He listed numerous “areas of concern” and suggested the following remedial measures: (1) removal of trees with exposed root balls; (2) “re-mortar[ing]” of a small hole and two cracks in the external mortar of the home; (3) removal of a fire ant mound near the gas meter; (4) tightening of two light fixtures; (5) straightening of the mailbox; (6) clearing the back lot of debris and logs; (7) touch-up paint in certain specified areas; (8) replacement of some weatherstripping; (9) adjustment of a dead bolt; (10) placement of splash blocks under downspouts; (11) adjustment of an electrical-switch plate to make it flush with an internal wall; (12) covering of an exposed thermostat wire; (18) having an air-conditioning technician review a small, vibrating air-conditioning unit; (14) sealing the attic furnaces with tape; (15) caulking and painting of specified crown moulding and caulking of the fireplace mantle; (16) removal of dead bugs from a light fixture; and (17) treatment for insects. Additionally, Brassfield included a statement that “[t]he buyer requests professional cleaning due to pets and insects.”
 
 [3]
 
 Although she expressed no dissatisfaction at the time, Moore later complained that Brassfield failed to properly inspect the home.
 
 [4]
 
 She did not include him as a defendant to this litigation.
 

 ¶ 8. On June 20, 2006, at Moore’s request, Hawkins informed Kyle that Moore was no longer interested in purchasing the
 
 *379
 
 home. However, a few days later, Hawkins contacted Kyle again and stated that Moore “has decided to take the last offer your seller made. She has had a change of heart[,] and the decision to reject the last offer was done [sic] in hast[e].”
 

 ¶ 9. Kyle amended the disclosure statement. The amended disclosure statement no longer listed the home as “new.” Instead, the amended disclosure statement indicated that the home was nine to twelve months old. Kyle made a similar amendment to the disclosed age of the appliances, but she did not amend the age of the roof. Furthermore, the amended disclosure statement omitted any reference to the one-year builder’s warranty, which DLC reportedly could not provide because it was not a builder.
 

 ¶ 10. On June 26, 2006, Moore executed a purchase agreement. Acting in his capacity for DLC, Bailey reviewed, initialed, and signed the purchase agreement. Bailey also executed addendums to the purchase agreement and the buyer/seller certification agreement. Four days later, Moore closed on the home and purchased it for $258,000.
 

 ¶ 11. The record contains a letter that Moore wrote to the Mississippi Real Estate Commission (MREC) on February 24, 2007. Within that letter, Moore stated that, on July 1, 2006, just days after closing, she told Kyle that she would be pursuing fraud charges against her. Moore also indicated that the home was infested with fleas. According to Moore, on July 4, 2006, a “cleaning crew” treated the home for fleas. Moore claimed that the cleaning crew professed to have used a poison that had been banned by the Environmental Protection Agency. Moore did not move into the home until July 8, 2006.
 

 ¶ 12. According to Moore, she “began to immediately notice major flaws.” She claimed that Kyle and DLC refused to make any repairs. In October 2006, she discovered that Long and Hale Electric had obtained permits for Brewer, who had actually performed the work. Tom Hud-gens, an estimator with Armil Construction Company, Inc., concluded that Moore would need to spend approximately $78,000 to address Hudgens’s findings and recommendations. On July 2, 2008, which was after Moore initiated this litigation, engineer Robert B. Aymett inspected the home. Among other things, Aymett stated that “[t]here are a number of defects in the construction of this building. While most of these defects in workmanship do not threaten the structural integrity or stability of the building, they are below the expected quality for a home of this size and price.”
 

 ¶ 13. On June 26, 2007, Moore filed a complaint in the DeSoto County Circuit Court and sued DLC, Bailey, and Kyle. Moore filed causes of action for breach of contract, tortious breach of contract, breach of implied warranty, breach of the implied covenants of good faith and fair dealing, negligent misrepresentation, grossly negligent misrepresentation, and fraud. Moore requested that the circuit court rescind the purchase agreement or award her damages.
 

 ¶ 14. Bailey and DLC filed a motion for partial summary judgment. Kyle later filed her own motion for summary judgment. The circuit court heard both motions and subsequently took them under advisement. On October 2, 2008, the circuit court granted both motions. Other matters will be discussed in greater detail as necessary. Aggrieved, Moore appeals.
 

 STANDARD OF REVIEW
 

 ¶ 15. This Court conducts a de novo review of orders granting or denying summary judgment.
 
 Mantachie Natural Gas
 
 
 *380
 

 Dist. v. Miss. Valley Gas Co.,
 
 594 So.2d 1170, 1172 (Miss.1992). According to Rule 56(c) of the Mississippi Rules of Civil Procedure, a circuit court may grant summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” “A fact is material if it ‘tends to resolve any of the issues, properly raised by the parties.’”
 
 Webb v. Jackson,
 
 583 So.2d 946, 949 (Miss.1991) (quoting
 
 Mink v. Andrew Jackson Cas. Ins. Co.,
 
 587 So.2d 481, 433 (Miss.1988)).
 

 ¶ 16. The moving party bears the burden of showing that no genuine issue of material fact exists.
 
 Tucker v. Hinds County,
 
 558 So.2d 869, 872 (Miss.1990). Additionally, the circuit court must view the evidence in the light most favorable to the non-moving party.
 
 Russell v. Orr,
 
 700 So.2d 619, 622 (Miss.1997). Furthermore, the circuit court must consider motions for summary judgment with a skeptical eye.
 
 Ratliff v. Ratliff,
 
 500 So.2d 981, 981 (Miss.1986). It is better for the circuit court to err on the side of denying the motion.
 
 Id.
 

 ANALYSIS
 

 I. TIMELINESS OF KYLE’S MOTION FOR SUMMARY JUDGMENT
 

 ¶ 17. This issue pertains to the agreed scheduling order by which the parties were obligated to file any dispositive motions on or before August 22, 2008. The agreed scheduling order also stated that a hearing on any such motion must occur no later than September 5, 2008, or that motion would be deemed abandoned. Kyle filed her motion for summary judgment on August 22, 2008; therefore, she filed her motion within the deadline set forth by the agreed scheduling order.
 

 ¶ 18. Moore argues that Kyle failed to provide adequate notice of the hearing on her motion for summary judgment. Pursuant to Mississippi Rule of Civil Procedure 56(c), Kyle was required to provide Moore with at least ten days’ notice in advance of a hearing on her motion. Accordingly, to meet the September 5, 2008, deadline for scheduling a hearing, as set forth in the agreed scheduling order, Kyle would have had to provide Moore with a notice of hearing on or before August 26, 2008. In this issue, Moore complains that Kyle did not provide her with notice of a hearing by that date. We are mindful that “[tjrial courts have inherent authority and duty to control their dockets for orderly disposal of business.”
 
 Mallet v. Carter,
 
 803 So.2d 504, 508 (¶ 9) (Miss.Ct.App.2002).
 

 ¶ 19. On August 29, 2008, all of the parties were before the circuit court incident to a hearing on a motion to bifurcate the proceedings. During that hearing, Kyle’s attorney requested that the circuit court hear Kyle’s motion for summary judgment on September 4, 2008, which was the same date that the circuit court was scheduled to hear Bailey and DLC’s motion for summary judgment. Moore’s attorney objected to the hearing date. Moore’s attorney argued that “[tjhere [was] no reason that [Kyle’s attorney] couldn’t have put [the motion for summary judgment] on the docket before September 5th as opposed to cram [sic] a special setting in and cram something on us.”
 

 ¶ 20. The circuit court then asked Moore’s attorney whether she was “fine with a hearing before September 5th.” Moore’s attorney responded and said, “I’m fine with hearing it before September 5th if we have time to respond. Obviously, we haven’t been noticed for any hearing.”
 
 *381
 
 Kyle’s attorney noted that Moore had not responded to Kyle’s motion for summary judgment, but Kyle had allowed Moore an extension of time in which to respond. The circuit court then asked all parties whether their schedules would allow for a hearing to occur on September 4, 2008. All parties agreed to that date. To be specific, Moore’s attorney stated, “[wje’re clear.”
 

 ¶ 21. On September 2, 2008, Moore filed her response to Kyle’s motion for summary judgment. Within her response, Moore stated that she was not waiving her right to receive ten days’ notice of a hearing on a motion for summary judgment, as set forth by Mississippi Rule of Civil Procedure 56(c). Moore also stated that she intended to retain her right to argue that Kyle’s motion for summary judgment should be deemed abandoned pursuant to the agreed scheduling order. However, Moore’s attorney did not specifically raise either issue during the actual hearing. The circuit court did not address Moore’s abandonment argument in its order, except to note that Moore did not raise her abandonment arguments during the hearing on Kyle’s motion for summary judgment.
 

 ¶ 22. Moore argues that the circuit court erred when it allowed Kyle to schedule a hearing on her motion for summary judgment when Moore did not comply with the ten-day notice requirement of Rule 56(c). According to Moore, it was pointless to reiterate her abandonment argument at the actual summary judgment hearing. We find that Moore did not necessarily waive her abandonment argument, because she presented it during the hearing on the motion to bifurcate. She also advanced her argument in her response to Kyle’s motion for summary judgment. However, we find no error in the circuit court’s decision to allow Kyle to schedule the hearing on her motion for summary judgment.
 

 ¶ 23. Kyle filed her motion for summary judgment within the agreed scheduling order’s deadline. Moore never claimed that she received untimely notice of Kyle’s motion for summary judgment. She was not ambushed by the motion.
 

 ¶24. Moore cites
 
 Pope v. Schroeder,
 
 512 So.2d 905, 908 (Miss.1987), in which the Mississippi Supreme Court held that a circuit court erred when it granted a motion for summary judgment where the movant failed to provide ten days’ notice of the hearing on the motion. However, the movant in
 
 Pope
 
 merely raised an ore tenus motion for summary judgment during a hearing on a co-defendant’s motion for summary judgment incident to the worker’s compensation litigation.
 
 Id.
 
 at 907. The movant in
 
 Pope
 
 failed to even raise the motion prior to the co-defendant’s motion hearing.
 
 Id.
 
 Here, Moore raised her motion for summary judgment within the time prescribed by the agreed scheduling order. The only issue is whether she timely scheduled her hearing. Additionally, the hearing on Kyle’s motion took place thirteen days after Kyle had filed her motion. In
 
 Pope,
 
 the Mississippi Supreme Court noted that in some circumstances, procedural error in granting a summary judgment may be harmless, such as under circumstances in which the ten-day notice is impractical, and it is absolutely clear that the non-moving party suffered no prejudice from a shortening of the time period.
 
 Id.
 
 at 908. Here, Moore suffered no prejudice due to the shortened period of time between the time she received notice of a hearing date and the actual hearing date. Combined with the circuit court’s inherent authority to manage its docket, we find no reversible error in this issue.
 

 
 *382
 
 II. STANDARD TO OVERCOME SUMMARY JUDGMENT
 

 ¶ 25. In its order, the circuit court stated that “Moore has put on no affidavits of anyone with fírst[-]hand knowledge that Kyle knew of any facts that she did not disclose about the home.” The circuit court went on to state the following:
 

 Moore asserted that Kyle had personal knowledge of defects with the property which would materially affect the value of the home and Kyle had a duty to disclose the defects. Although she submitted her own affidavit, Moore's allegations in her affidavit are not supported by affidavit or deposition testimony. The affidavit mentions what others will testify about but not actual affidavits of those who will testify.
 

 Finally, the circuit court stated that: “Personal knowledge of what others will say is not personal knowledge at all.” Accordingly, the circuit court concluded that “Moore’s affidavit [was] not based on personal knowledge” and held that Moore had, therefore, failed to demonstrate the existence of any genuine issues of material fact. Consequently, the circuit court granted Kyle’s motion for summary judgment.
 

 ¶ 26. Moore claims the circuit court erred. Moore’s argument under this heading applies broadly to each of her numerous allegations regarding negligent misrepresentation and fraud. However, for clarity’s sake, rather than addressing these concepts in conceptual generalities, it is more appropriate to address this relatively broad issue in conjunction with each of Moore’s individual claims of misrepresentation. Accordingly, we will address the arguments raised under this heading as we analyze Moore’s specific arguments in Issue VII.
 

 III. STATUTORY CAUSE OF ACTION
 

 1127. In her complaint, Moore claimed that she was entitled to recover damages from Kyle pursuant to the Real Estate Brokers License Law of 1954 set forth in Mississippi Code Annotated section 73-35-1 through -37 (Rev.2008). The circuit court held that Moore was not qualified to recover damages from Kyle pursuant to any statutory provision within the Real Estate Brokers License Law of 1954. Moore claims the circuit court erred.
 

 ¶28. Moore claims that she was entitled to recover damages from Kyle based on language from Mississippi Code Annotated section 73-35-21 (Rev.2008). Additionally, Moore argues that Mississippi Code Annotated section 73-35-31 (Rev. 2008) also provides her with an actionable private cause of action against Kyle. We disagree.
 

 ¶29. Based on the plain language of the statute, section 73-35-21(1) lists the grounds by which the MREC may justify refusing an applicant’s request for a real estate broker’s license. Section 73-35-21(1) also addresses the circumstances under which the MREC may revoke or suspend an existing real estate broker’s license. There is no provision in section 73-35-21 that operates as a private cause of action that a disgruntled purchaser may bring against a real estate broker.
 

 ¶ 30. Section 73-35-31(1) sets forth punitive measures in the form of potential penalties or imprisonment for violations of the Real Estate Brokers License Law of 1954. Section 73-35-31(2) states as follows:
 

 In case any person ... shall have received any sum of money ... as commission, compensation or profit by or in consequence of his violation of any provision of this chapter, such person ... shall also be liable to a penalty of not
 
 *383
 
 less than the amount of the sum of money so received and not more than four (4) times the sum so received, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction.
 

 The cornerstone of this issue is whether Moore qualifies as a “person aggrieved,” within the context of section 73-35-31(2). We addressed the meaning of a “person aggrieved” as contemplated by section 73-35-31(2) in
 
 Leary v. Stockman,
 
 937 So.2d 964, 974 (¶ 50) (Miss.Ct.App.2006). In
 
 Leary,
 
 this Court stated that “[w]e interpret the statute to apply to situations in which a foreign broker or agent receives a commission from either the buyer or the seller; so that the foreign broker or agent is penalized for his unlicensed transaction.”
 
 Id.
 
 Accordingly, while we disagree with the trial court’s characterization that section 73-35-31 fails to provide for a civil remedy, we find that section 73-35-31 does not provide a civil cause of action that Moore may utilize against Kyle. Our interpretation does not mean that Moore or any other similarly-suited party is prohibited from seeking recovery against a licensed real estate broker. Instead, we merely conclude that, under the precise circumstances of this case, section 73-35-31(2) is not a statutory mechanism that Moore may use to pursue a civil remedy against Kyle. Accordingly, we find no reversible error.
 

 IV.DISCLAIMER
 

 ¶ 31. In its order granting summary judgment, the circuit court noted that “Moore also signed a contract [that] contained a disclaimer which absolved Kyle of all liability.” The disclaimer at issue appeared in the purchase agreement. Moore claims the circuit court erred. However, based on our resolution of Moore’s other assignments of error, this issue is moot. That is, even if we were to find that the disclaimer language was void, in Issue VII, we find that Moore failed to demonstrate the existence of any genuine issues of material fact regarding her fraud claims.
 

 V. BAILEY’S PERSONAL LIABILITY
 

 ¶32. Kyle claims that Bailey should have been found personally liable for torts he committed while acting on DLC’s behalf. However, in Issue VII, we find no error in the circuit court’s decision to grant Bailey and DLC’s motion for summary judgment. Accordingly, whether Bailey should be held personally liable is irrelevant.
 

 VI. RESCISSION
 

 ¶ 33. In this issue, Kyle claims that the circuit court erred when it held that rescission was not an appropriate remedy for fraud. However, we find that the circuit court did not err when it granted the Appellees’ motions for summary judgment. It follows that it is premature to determine whether rescission would or would not be an appropriate remedy.
 

 VII. GENUINE ISSUES OF MATERIAL FACT
 

 ¶34. Moore claims the circuit court erred when it granted Kyle’s motion for summary judgment and Bailey and DLC’s motion for partial summary judgment. According to Moore, the circuit court failed to recognize the existence of any genuine issues of material fact. Moore claims there were genuine issues of material fact incident to all six of her causes of action for fraud.
 

 ¶ 35. To demonstrate a prima facie case of fraud, otherwise known as intentional misrepresentation, a plaintiff
 
 *384
 
 must demonstrate by clear and convincing evidence the following nine elements:
 

 (1) a representation (2) that is false (3) and material (4) that the speaker knew was false or was ignorant of the truth (5) combined with the speaker’s intent that the listener act on the representation in a manner reasonably contemplated (6) combined with the listener’s ignorance of the statement’s falsity (7) and the listener’s reliance on the statement as true (8) with a right to rely on the statement, and (9) the listener’s proximate injury as a consequence.
 

 Moran v. Fairley,
 
 919 So.2d 969, 975 (¶ 28) (Miss.Ct.App.2005). Clear and convincing evidence is defined as follows:
 

 that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.
 

 Johnson v. Bay City South Mortgage Co.,
 
 928 So.2d 888, 892 (¶ 14) (Miss.Ct.App. 2005). The clear and convincing standard of proof “is such a high standard [of proof] that even the overwhelming weight of the evidence does not rise to the same level.”
 
 Id.
 
 However, we are not concerned with whether Moore met her burden of proof. Instead, we merely determine whether there were genuine issues of material fact sufficient to defeat the Appellees’ motions for summary judgment.
 

 ¶ 36. Moore attached an “itemization of misrepresentations to her complaint.” Within that document, Moore listed eighteen matters that she considered to be misrepresentations by Kyle, Bailey, and DLC. The circuit court addressed all eighteen alleged misrepresentations in its order granting summary judgment. On appeal, however, Moore claims the circuit court erred in finding no genuine issue of material fact regarding only five alleged misrepresentations. We address each alleged misrepresentation separately.
 

 1. The Age of the House
 

 ¶ 37. Moore claims she was fraudulently told that “the home had been completed by Hooker prior to DLC purchasing it[,] but [the home] had not sold in over a year.” According to Moore, there was a genuine issue of material fact regarding whether that representation was false. Moore claims the following matters demonstrate the presence of genuine issues of material fact: (1) according to Kyle’s affidavit, the home had some structural features when DLC purchased it, but it was not completely finished; (2) DLC spent approximately $75,000 to complete the home; (3) DLC was required to obtain additional building permits to complete the home; and (4) the home passed its final inspection on May 4, 2006, which was more than a year after DLC had purchased the home.
 

 ¶ 38. Moore claims that Kyle knew that she falsely represented the age of the home. Moore draws our attention to Kyle’s testimony that she was familiar with the condition of the property when Hooker owned it. Moore also notes that Kyle testified regarding the condition of the property when DLC purchased it in 2005. Additionally, Moore points out that Kyle testified regarding why she changed the age of the property in the amended property-disclosure document in June 2006. As for Bailey/DLC, Moore claims Bailey knew that the property was not “new” because DLC: (1) hired Brewer to finish the home, (2) invested money toward the completion of the home, and (3) obtained additional building permits to complete the construction of the home.
 

 
 *385
 
 ¶ 39. The initial property-disclosure statement indicated that the property was “new.” However, the amended property-disclosure statement indicated that the property was nine to twelve months old. Accordingly, Moore was correctly informed about the age of the construction. At best, the alteration was an attempt to correctly classify the age of the home, which was ambiguous in that it had been partially completed, abandoned, sold, and completely finished. Many of Moore’s arguments regarding DLC’s knowledge of the age of the home could be used as reasoning to conclude that the home was “new.” That is, one could argue that the home was correctly classified as “new” in that: (1) it had not been purchased by anyone who had lived in the home; (2) it had been necessary for DLC to contract with builders to finish the construction; and (3) it had been necessary for those builders to secure permits and a final inspection of the home. Although the presence of that ambiguity suggests that there was a genuine issue of material fact regarding whether the representation of the home’s age was false, there is no evidence that Moore suffered proximate injury as a result. Consequently, we find no merit to this assignment of error.
 

 2. Bailey and/or DLC’s Involvement in Construction
 

 ¶ 40. Next, Moore claims that she was fraudulently told that “DLC/Bailey had nothing to do with the construction of the home and merely held it as investment property.” Among other things, the circuit court held that Moore “put forth no proof [that] she was injured by any representation that Bailey was or was not the ‘builder.’” We agree.
 

 ¶41. First and foremost, there is no evidence that Bailey or DLC was or had ever been a licensed builder. Second, we agree with the circuit court that Moore put forth no evidence that she somehow suffered damages simply because she was told that Bailey or DLC was not a builder. Having found no genuine issue of material fact, we find no merit to this portion of Moore’s assignment of error.
 

 3. Additions, Renovations, or Alterations During DLC’s Ownership
 

 ¶ 42. Next, Moore claims she was fraudulently told that “no additions, renovations, or alterations had been made to the home during DLC’s ownership.” A statement somewhat to that effect appeared in the amended property-disclosure statement. However, the precise statement was that there had not been any “additions, remodeling, structural changes, or other alterations to the property.”
 

 ¶43. On appeal, Moore states that “[t]hese misrepresentations are so interrelated with the first [representation regarding the age of the home] that the evidence showing knowledge of falsity or ignorance of truth would be the same; thus, Moore does not discuss them again here.” We agree that the representation regarding the age of the home is interrelated to Moore’s allegation that she was misled regarding whether there had been any additions, structural changes, or modifications to the home during the time that DLC owned it. Because there was no evidence that Moore suffered a proximate injury based on any representation to that effect, there was no genuine issue of material fact regarding that element of a prima facie case of fraud. Moore had the property inspected before she purchased the home. Moore’s own real estate agent recommended the inspector. Although we do not hold that the pre-purchase inspection, in and of itself, absolved Kyle, Bailey, or DLC of liability, under the precise circumstances of this case, there is no evidence that Moore suffered a proximate injury
 
 *386
 
 based on that alleged misrepresentation. Consequently, we find no merit to this portion of Moore’s assignment of error under this heading.
 

 4. Compliance with Relevant Building Codes and State Laws
 

 ¶ 44. Next, Moore claims she was fraudulently told that “all work on the home had been done by licensed professionals in compliance with the building code and state law.” The amended property-disclosure statement reflects that Moore was told that the “residence [was] built in conformity with an approved building code.” It is undisputed that the home passed all inspections required by the DCPC. There is no merit to this portion of Moore’s argument.
 

 5. Presence of Mold, Mildew, or Vermin
 

 ¶45. Finally, Moore claims that she was fraudulently told that “there was not, nor had there ever been, mold, mildew or rot present in the home.” The initial property-disclosure statement and the amended property-disclosure statement both included a statement that there was no “evidence of rot, mildew, vermin, rodents, termites, carpenter ants, or other infestations.” On appeal, Moore focuses solely on whether she was misled regarding the presence of mold and mildew. In that regard, the circuit court found that there was no genuine issue of material fact regarding whether Moore was misled because Moore only submitted her own affidavit to support her allegation, and she admitted that she did not have any personal knowledge of the matters she advanced. That is, the circuit court noted that, within Moore’s affidavit, Moore swore that unspecified neighbors would testify that the shell of the house was open to the elements for more than fourteen months.
 

 ¶ 46. We agree with the circuit court’s resolution. Moore’s affidavit did not include any evidence within her personal knowledge that created a genuine issue of material fact. Instead, Moore’s affidavit merely stated that unspecified neighbors would testify that the home was open to the elements for some time. In effect, Moore swore that someone or some others would swear to certain evidence. Moore’s affidavit in which she swears to matters that were outside of her personal knowledge is insufficient to defeat a motion for summary judgment.
 

 ¶ 47. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Brewer obtained his license after he finished working on the home at issue.
 

 [2]
 

 . In her responses to interrogatories, Moore expressed dissatisfaction with Hawkins's services. She accused him of numerous things, including dishonest conduct and unethical behavior. Moore never named Hawkins as a defendant.
 

 [3]
 

 . The home was occupied by renters at the time Moore was considering purchasing it. Those renters had one or more unspecified pets.
 

 [4]
 

 .In her responses to interrogatories, Moore stated that: “Brassfield’s promise to be thorough and to protect my financial interest was deceptive!,] and his inspection revealed that he is possibly incompetent. However, this does not supercede the ‘initial’ deception by the seller, his agent and his builder.”